W. J. Lytle et al. v. Galveston, Harrisburg & San Antonio Railway Company et al.

No. 1508. Decided January 23, 1907.

**1.—Railway—Injunction—Ticket Scalpers.**

A railway may maintain injunction against dealing in tickets issued for special occasions at reduced rates and marked not transferable; such sale is an actionable wrong as an interference tending to bring about a breach of contract by the original purchaser and a fraud on the company by the transferee. (Pp. 299, 300.)

**2.—Same—Tickets to be Issued in Future.**

Such injunction may cover the sale of tickets to be issued in the future as well as those in force at the time of the judgment, the remedy after issuance being inadequate; but it should be limited to tickets which the carrier has already determined on selling and placed on the sale, as presenting the only case in which threatened injury is imminent. (Pp. 300–303.)

**3.—Railway—Excursion Rates—Anti-trust Law.**

No law of the State or the United States makes it unlawful for a railway company to issue excursion tickets at reduced rates, for special occasions or gatherings, though done in pursuance of agreement with associations or citizens interested in promoting such gatherings. (P. 303.)

**4.—Enjoining Persons not Parties—Certified Question.**

The rights of persons not parties to the action can not be determined by the judgment; the Supreme Court will not, upon certified question, pass on the validity of an injunction as applied to persons having notice but not made parties, it being unnecessary to a decision upon the rights of the parties appealing. (P. 304.)

Questions certified from the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

*W. H. Lipscomb, Walter P. Napier* and *William Aubrey,* for appellants.—Injunction will not lie to restrain the invasion of other than a present fixed right. Dunn v. City of Austin, 77 Texas, 141; Business Men's League v. Waddill, 143 Mo., 495; Nelms v. Pinson (Ga.), 17 S. E. Rep., 350; Brookline v. Mackintosh, 133 Mass., 215; 16 Am. & Eng Ency. Law, 361; Bispham, Equity, sec. 440; 1 Beach, Injunction, sec. 20.

The injunction sought by the appellees and granted by the court involves the exercise of legislative rather than judicial powers. Osborn v. United States Bank, 9 Wheat., 319; Cooley Const. Law, 44.

When it appears, from allegations in plaintiff's petition, that they had formed a combination or entered into an agreement, express or implied, whereby the cost of transporting passengers is or shall be fixed and maintained, a court of equity should decline to extend relief to the parties in aid or furtherance of such combination or contract. A contract or combination between competing railroad companies which fixes the rate of transportation between the several States is contrary to the Act of Congress of July 2, 1890, illegal and void and any contract based thereupon or made in pursuance thereof is in like manner illegal and void. Act of Congress, July 2, 1890, 26 U. S. Stats. at Large, chap. 647; United States v. Trans-Missouri Freight Assn., 166 U. S., 290; Hopkins v. United States, 171 U. S., 578; United States v. Joint Traff. Assn., 171 U. S., 505; Addyston Pipe & Steel Co. v. United States, 175 U. S., 211; Northern Securities Co. v. United States, 193 U. S., 197; Swift & Co. v. United States, 196 U. S., 375; National Cotton Oil Co. v. Texas, 197 U. S., 115; Delaware, L. & W. R. Co. v. Frank, 110 Fed. Rep., 695.

A railroad ticket is a nonnegotiable instrument and, as such, may be assigned by the owner thereof—any stipulation in the same to the contrary notwithstanding. Rev. Stats., 1895, arts. 308-309; Act Texas Leg., January 25, 1840 (Hartley's Dig., arts. 2520-2526, 1 P. D. art. 222); 1 Bouvier Law Dict., 1065; Knight v. Holloman, 6 Texas, 161; McDonough v. Tutt, 31 Texas, 201; East Texas Fire Ins. Co. v. Coffee, 61 Texas, 289; Levison v. Texas & N. O. Ry. Co., 43 S. W. Rep., 1032; Galveston, H. & S. A. Ry. Co. v. Kinnebrew, 27 S. W. Rep., 631; Gulf, C. & S. F. R. R. Co. v. Rather, 21 S. W. Rep., 951; Gulf, C. & S. F. Ry. Co. v. Daniels, 29 S. W. Rep., 427; St. Louis, A. & T. Ry. v. Mackie, 71 Texas, 491; San Antonio & A. P. Ry. Co. v. Newman, 43 S. W. Rep., 915; International & G. N. Ry. Co. v. Best, 93 Texas, 345; Texas & N. O. Ry. Co. v. Demilley, 41 S. W. Rep., 148, affirmed by Supreme Court, 42 S. W. Rep., 540; Missouri, K. & T. Ry. Co. v. Harrison, 97 Texas, 615; Missouri, K. & T. Ry. Co. v. Fookes, 40 S. W. Rep., 858; International & G. N. Ry. Co. v. Ing, 68 S. W. Rep., 722.

A combination of capital, skill or acts by two or more persons to fix, maintain or reduce the price of a commodity is a trust or monopoly and any contract made in aid of such combination is void. Act March 31, 1903, sec. 1. par. 2, Acts, p. 119; National Cotton Oil Co. v. Texas, 197 U. S., 115; Queen Insurance Co. v. State, 86 Texas, 250; San Antonio Gas Co. v. State, 54 S. W. Rep., 289.

An agreement or combination of capital, skill or acts to fix or main-

tain any standard or figure whereby the cost of transportation of passengers by railroads shall be in any manner affected, controlled or established is a trust or monopoly and contracts made in aid thereof, null and void. Act March 31, 1903, sec. 1, par. 4, Acts, p. 120, and cases cited under last foregoing proposition.

An injunction can not be made operative against persons not parties to the suit and not agents, attorneys or employes of such parties. Gibson v. Templeton, 62 Texas, 559; 2 High Injunction, sec. 1548; Waller v. Harris, 7 Paige, 167.

*Wm. H. Burges* and *W. A. Hawkins,* for appellee Galveston, Harrisburg & San Antonio Ry. Company.—The District Court was authorized to enjoin the sale of railroad tickets marked "nontransferable," which were not in existence at the time the decree was rendered, but which might be issued at some time in the future. Schubach v. McDonald, 78 S. W. Rep., 1020; Nashville Ry. Co. v. McConnell, 82 Fed. Rep., 65; Louisville & Nashville Ry. Co. v. Bitterman, 128 Fed. Rep., 176; Illinois Central Ry. Co. v. Caffrey, 128 Fed. Rep., 770; Pennsylvania Ry. Co. v. Bay, 138 Fed. Rep., 203; Kinner v. Lake Shore Ry. Co., 69 N. E. Rep., 614; Delz v. Winfree, 80 Texas, 400; Olive v. Van Patten, 25 S. W. Rep., 428; Rev. Stats. of Texas (1895), art. 2989; Sumner v. Crawford, 91 Texas, 129; 4 Pomeroy Equity, sec. 1354; Scott v. Donald, 165 U. S., 107; Angle v. Chicago, etc., Ry. Co., 151 U. S., 1; Sherry v. Perkins, 147 Mass., 212; Vegelahn v. Guntner, 44 N. E. Rep., 1077; Walker v. Cronin, 107 Mass., 555; Carew v. Rutherford, 106 Mass., 1; Wheelock v. Noonan, 15 N. E. Rep., 67; Brown v. Jacob, 57 L. R. A., 547; Ellis v. Blee Mountain Forest Assn., 41 Atl. Rep., 856; Blondell v. Consolidated Gas Co., 43 Atl. Rep., 817; Kellogg v. King, 46 Pac. Rep., 166; Krueger v. Wisconsin Tel. Co., 81 N. W. Rep., 1041; Flaccus v. Smith, 54 L. R. A., 640; National Tel. News Co. v. Western U. Tel. Co., 119 Fed. Rep., 294; Barr v. Essex Trades Council, 30 Atl. Rep., 881; Steamship Co. v. McKenna, 30 Fed. Rep., 48; Casey v. Cincinnati Typographical Union, 45 Fed. Rep., 135; Turner v. City of Mobile, 33 Southern, 132.

Even if the agreements alleged to exist between the railroads and the several associations were contrary to the antitrust laws of the State of Texas and the United States, the defendants would not be permitted to assert them as a reason why plaintiffs would not have the relief they were otherwise entitled to. Pennsylvania R. R. Co. v. Bay, 138 Fed., 203; Kinner v. Lake Shore, etc., Ry. Co., 69 N. E. Rep., 614; Pennsylvania Ry. Co. v. Beekman, 30 West L. R., 715; Pfeuffer v. Maltby, 54 Texas, 454; De Leon v. Trevino, 49 Texas, 89; McBlair v. Gibbes, 17 How., 232; Brooks v. Martin, 2 Wall., 70; I Pomeroy's Eq. Jur., 398-9; Chicago v. Union Stock Y. T. Co., 35 L. R. A., 281. and 286; Strait v. National Harrow Co., 51 Fed., 819; Liverpool & L. & G. Ins. Co. v. Clume, 88 Fed., 160, 170; American Steel Co. v. Wire Drawers, 90 Fed., 608; Trice v. Comstock, 121 Fed. Rep., 620; Brown v. Jacobs, 57 L. R. A., 547; Delaware Surety Co. v. Layton, 50 Atl. Rep., 378; Yale Gas Stove Co. v. Wilcox, 42 Am. St. Rep., 173; Sharp v. Taylor, 2 Phillips Ch., 801.

*Frank H. Walsh,* for appellees.—Injunctions against ticket scalpers have been upheld in the following cases: Nashville Ry. Co. v. McConnell, 82 Fed. Rep., 65; Kinner v. Lake Shore & M. So. R., 69 N. E., 614; Pennsylvania R. Co. v. Beekman, 30 Wash. L. R., 715; Louisville & N. R. Co. v. Bitterman, 128 Fed., 177; Boston & Me. R. Co. v. Fogg, July, 1903, not yet reported; Ill. Cent. R. R. Co. v. Caffrey, 128 Fed., 770; Schubach v. McDonald, 78 S. W. Rep., 1020; Pennsylvania Co. v. Bay, 138 Fed. Rep., 203.

Injunction the proper remedy to prevent future wrongs. Farmers Loan & Trust Co. v. Northern Pac., 60 Fed., 803; Toledo, etc., R. Co. v. Pennsylvania R. Co., 54 Fed., 730; Sherlock v. Kansas City R. Co., 43 S. W. Rep., 629; Waterworks v. Vicksburg, 185 U. S., 65; Krueger v. Wisconsin Tel. Co., 81 N. W. Rep., 1041; Wheelock v. Noonan, 15 N. E. Rep., 67; Ellis v. Blue Mountain, etc., Assn., 41 Atl. Rep., 856; Kellogg v. King, 46 Pac. Rep., 166; Blondell v. Consolidated Gas Company, 43 Atl. Rep., 817.

A bill alleging interference with complainant's business and causing loss by reason of fraud, will lie. Hamilton-Brown Shoe Co. v. Saxey, 131 Mo., 212; Vegelahn v. Guntner, 167 Mass., 99; Scott v. McDonald, 165 U. S., 107; In re Debs, 158 U. S., 564; Nat. Tel. News Co. v. Western U. T. Co., 56 C. C. A., 198; High on Injunctions (3d ed.), 671; American Fisheries Co. v. Lennen, 118 Fed. Rep., 872.

The fact that the railway companies may be violating some law can not be urged as a defense to an action to enjoin "Ticket Scalpers" from interfering with contracts and thereby committing fraud—and where such collateral questions are sought to be used as a defense, they are treated as irrelevant, impertinent and immaterial. Kinner v. Lake Shore & M. S. R., 69 N. E., 614; Pennsylvania R. R. Co. v. Beekman, 30 Wash. L. R., 715; American Steel and Wire Co. v. Wire Drawers' Union, 90 Fed., 615; The Chas E. Wisewell, 74 Fed. Rep., 802; Lafayette Bridge Co. v. City of Streator, 105 Fed. Rep., 729; Connolly v. Union Sewer Pipe Co., 184 U. S., 551; Pennsylvania Co. v. Bay, 138 Fed. Rep., 203. Contra, Delaware L. & W. R. Co. v. Frank, 110 Fed. Rep., 689.

The maxim that he who comes into a court of equity must come with clean hands is confined to misconduct in regard to the matter in litigation, so that it is in some measure affecting the equitable relations subsisting between the parties and arising out of the very transaction. It does not extend to any misconduct, however gross, which is not connected with the matter in litigation, and with which the opposite party has no concern. All authorities cited under previous counter propositions and in addition: Pomeroy's Eq. Jur. (1881), par. 399; 11 Enc. of Law (2d ed.), 164; Connolly v. Union Sewer Pipe Co., 184 U. S., 540-5; Pennsylvania Co. v. Bay, 138 Fed. Rep., 203; Harrison v. Glucose Sugar Ref. Co., 116 Fed., 304; Bateman v. Fargason, 4 Fed., 32; Fly v. Supervisors, 36 N. Y., 297; Strait v. National Harrow Co., 51 Fed. Rep., 819; Chas E. Wisewell, 74 Fed. Rep., 802; Dennehy v. McNulta, 86 Fed. Rep., 825; London & L. & G. Ins. Co. v. Clunie, 88 Fed. Rep., 160; Woodward v. Woodward, 41 N. J. Eq., 224; American Steel and Wire Co. v. Wire Drawers' Union, 90 Fed. Rep., 608; Lafayette Bridge Co. v. City of Streator, 105 Fed. Rep.,

729; City of Chicago v. Union Stock Y. & T. Co., 164 Ill., 224; Mossler v. Jacobs, 66 Ill. App., 571; Equitable Gaslight Co. v. Baltimore Coal Tar Mfg. Co., 65 Md., 73; Lewis & Nelson's Appeal, 67 Pa. St., 153; Distilling Co. v. Cream City Imp. Co., 86 Wis., 352; Langdon v. Templeton, 66 Vt., 173-182; Ainsfield v. Grossman, 98 Ill. App., 180; Foster v. Winchester, 92 Ala., 497; Sylvester v. Jaume, 34 Pac., 670; Corbett Case, 59 N. W., 317; Walker Bros. v. Southern Ry. Co., 49 S. E., 84; Way v. Railroad, 64 Iowa, 48; Logan v. Railway, 77 Mo., 663; Fry v. State, 63 Ind., 552; Burdick v. People, 24 L. R. A., 152 (Ill.); Mosher v. Ry. Co., 127 U. S., 390; Rolf v. Ry. Co., 71 Pac., 526; Railroad Co. v. Wright, 47 N. E., 491; Rahilly v. Railroad Co., 68 N. W., 853; State v. Corbett, 57 Minn., 342; Dangerfield v. Railroad Co., 61 Pac., 405; Corner v. Foley, 25 S. E., 671; Post v. Chicago N. W. Ry. Co., 15 N. W., 225.

A railway ticket is a contract which may by its terms be limited and made nontransferable, and may be taken up and cancelled if presented or found within the hands of· any other than the original purchaser. Demilley v. Texas & N. O. Ry. Co., 91 Texas, 215; Jannin v. State, 51 S. W. Rep., 1126; Houston & T. C. v. Ritter, 41 S. W. Rep., 753; Abram v. Gulf, C. & S. F., 83 Texas, 61; Ketcheson v. Southern Pac. Co., 46 S. W. Rep., 907; Houston & T. C. v. Avrey, 44 S. W. Rep., 894; Reed v. Texas & N. O., 50 S. W. Rep., 432; Levinson v. Texas & N. O., 43 S. W. Rep., 1032; Gulf, C. & S. F. Ry. Co. v. Daniels, 29 S. W. Rep., 427; Watson v. Louisville & N. R. R. Co., 56 S. W. Rep., 1024; 3 U. S. Comp. Stat. (1901), p. 3170; Elliott on Railroads, pars. 1593-4; Elliott on Railroads, pars. 2484, 2499, 1500; Nashville, C. & St. L. R. v. McConnell, 82 Fed. Rep., 65; Frank v. Ingalls, 41 Ohio State, 560; Dietrich v. Pennsylvania R., 71 Pa., 435 (10 Am. Rep., 711.); Freinenrich v. Baltimore & Ohio R., 53 Md., 201 (2d Am. and Eng. R. R. Cases, p. 280); Munn v. People, 69 Ill., 80 (94 U. S., 113); Drummond v. Southern Pac. R., 25 Pac., 733; Thompson on Corp., par. 65; Angell Carriers (5th ed.), sec. 609; 2 Beach, Rys., sec. 869.

Parties having knowledge of the injunction are rendered amenable thereto, although not parties to the suit. Ex parte Stone, 72 S. W. Rep., 1000 (Texas); Chisolm v. Caines, 121 Fed. Rep., 397; Ex parte Lennon, 64 Fed. Rep., 320, 166 U. S., 548; In re Debs, 158 U. S., 593; Toledo A. A. & N. M. R. Co. v. Pennsylvania Co., 54 Fed. Rep., 746; American Steel and Wire Co. v. Wire Drawers', etc., 90 Fed. Rep., 615; Fowler v. Beckman, 30 Atl. Rep., 1117.

GAINES, CHIEF JUSTICE.—The questions as shown by the following certificate have been referred to us by the Court of Civil Appeals for the Fourth Supreme Judicial District for our determination:

"The appellees herein, five railway companies, applied to the District Court of the Thirty-seventh Judicial District of Texas in and for Bexar County for an injunction to perpetually restrain nine men, the appellees, their agents, servants, employes and representatives "from either directly or indirectly having any connection for themselves or in behalf of others, by selling, exchanging or in any way dealing in or soliciting the purchase or sale of the right to travel upon any of plaintiffs' lines

of railroad, or the return coupon or the unused portion thereof issued by plaintiff railroads, or either of them, or by any other railroad if for use over plaintiffs' lines of railway, or any part of them, which by the terms thereof are printed, marked, written or stamped, or marked in any manner upon any portion thereof 'Nontransferable' or equivalent words, or from soliciting, devising, encouraging or procuring any person or persons other than the original purchaser or holder thereof to use or attempt to use the same or any part thereof for passage on any train or trains of plaintiff railroads, or either of them, especially nontransferable passes, one way trip passes and nontransferable passes of every kind and character, all nontransferable advertising contracts of transportation, all nontransferable homeseekers' tickets, tourist tickets, commutation tickets, mileage tickets, San Antonio Carnival, Battle of Flowers or San Jacinto Day Tickets, Rough Riders' Reunion tickets, and all other nontransferable tickets, whether sold for any special occasion or not, reading over any of plaintiff's lines, or either of them, or any part thereof."

"The substantial allegations are stated as follows, in the brief of appellants and agreed to by appellees: 'That appellees were railway corporations whose lines covered practically the State of Texas, and by connecting lines reached all the railroad stations in the United States, Canada and Mexico and transported and would continue to transport large numbers of passengers to all points in Texas as well as to foreign countries:

" 'That, at the request of various associations and various citizens of San Antonio, appellees made special low rates, varying from one and one-half to two cents per mile to and from San Antonio, for the Spring Carnival and other occasions in that city and elsewhere and purpose to continue to do so in the future;

" 'That said special rates were and would be evidenced by tickets issued to the original purchasers thereof only and marked, stamped, written or printed "nontransferable," or some equivalent words, upon some portion of such tickets and that appellees had issued and would thereafter frequently issue annual and trip passes, advertising tickets or contracts printed in the same mode and, like many of said tickets, requiring the signatures of the person to whom the same were originally issued and to be used alone by such persons;

" 'That one of the purposes and objects of the original contracting parties, and the effect of the issuance and entering into the contracts, tickets and other evidences of the right to transportation the selling and dealing in which is sought to be enjoined, are to maintain and affect the regular rate of three cents per mile for regular passenger transportation on other character of tickets;

" 'That appellants are engaged in, and advertise themselves as buying, selling, exchanging and otherwise dealing in railroad tickets, passes, advertising contracts and all kinds of railroad transportation, including said "nontransferable" tickets, thereby causing persons other than the original purchasers or holders of said tickets, etc., to personate such original purchasers, etc., and use said tickets, etc., for transportation and threaten to continue to do so;

" 'That none of appellants is the agent of appellees or holds certifi-

cates of authority from them to sell tickets or are authorized to act as appellees' agents in buying, etc., said tickets over appellees' lines;

" 'That said defendants have been joined herein because their business transactions complained of are, in fact, purpose and effect, identical, and in order to prevent a multiplicity of suits, the relief sought being in behalf of all plaintiffs and against all of said defendants.'

"It was also alleged that the acts of appellants in the premises besides being productive of innumerable annoyances and manifold grievances to the traveling public, circumstantially and clearly set forth by the pleader, caused and would cause great injury and damage to the business of appellees.

"Appellants answered by general demurrer, which was overruled by the trial court, general denial, and by special pleas, whereby they alleged that the agreements between the appellees and the original purchasers evidenced by the tickets, contracts, etc., the sales of which by appellants were sought to be enjoined were made in violation of the antitrust legislation of the State of Texas and of the United States, were, as such void, and that in seeking to prevent their sale, etc., by injunction, appellees had not come into court with clean hands, etc.

"A temporary injunction was granted which was, on final hearing, made perpetual. The decree is as follows:

" 'That the aforenamed defendants, their agents, servants and employes be and the same are forever enjoined from interfering with plaintiffs' business, by buying, selling, exchanging or otherwise dealing in any ticket, certificate, advertising contract, or pass, or the return portions of any of said evidences of a right to transportation over the roads or any part thereof of any of the plaintiffs where such tickets, certificate, advertising contract, pass or any other evidence of the right to transportation either by the terms thereof is nontransferable, or on which is printed, marked, written or stamped upon any portion thereof the words "nontransferable" or equivalent words.

" 'And this injunction shall apply to all classes of tickets and other evidences of the right to transportation, issued at a reduced rate, already issued, or to be issued in the future, whereon is printed, marked, written or stamped upon any portion thereof the words "nontransferable" or equivalent words, whether specially named herein or not, as well as to the following: all nontransferable passes of every kind and character, all nontransferable advertising contracts of transportation, or nontransferable homeseekers' tickets, mileage tickets, tourist tickets, commutation tickets, or San Antonio Carnival, Battle of Flowers, San Jacinto Day tickets, San Antonio International Fair tickets, Rough Riders' Reunion tickets, immigrant or emigrant tickets, tickets to teachers' associations and conventions, church conventions of all denominations, Sunday school conventions of all denominations, medical associations and conventions of all kinds and characters, meetings of all Masonic orders, all Knights of Pythias, Elks, Woodmen of the World, Odd Fellows, Hoo Hoo or Black Cat, Knights of Columbus, and all meetings of all secret orders of all kinds and characters whether mentioned herein or not, all conventions or builders' exchange, Federation of Woman's Clubs, Daughters of the Confederacy, Confederate Veterans, tickets to all points where are being held state and county

fairs, livestock associations, livestock shows, circus, saengerfests, all musical and educational conventions, Labor Day celebrations, political conventions, tickets for winter tourists in Texas, summer tourists from Texas, Christmas holidays to Texas, Fourth of July excursions, school conventions of all kinds and characters, tickets to places where there are theatrical entertainments, farmer's congresses, land seekers to Texas, sheriffs' conventions, county judges' conventions, district and county clerks' conventions, real estate conventions, provided only that such tickets shall be nontransferable tickets, that is that they shall contain in the body of the ticket, or have marked, printed, written or stamped on some portion thereof the words "nontransferable" or equivalent words.

"'That all persons whomsoever, whether mentioned herein by name or not, who may have knowledge of this injunction, are likewise enjoined from the transactions mentioned in the preceding paragraph of this decree and shall be bound by them as fully as if mentioned by name herein.'

"The record does not contain a statement of facts.

"Question 1. Was the District Court authorized to enjoin the sale of railroad tickets marked 'nontransferable' which were not in existence at the time the decree was rendered, but which might be issued at some time in the future?

"Question 2. Were the agreements alleged to exist between the railroads and the various associations and citizens of San Antonio in violation of the Antitrust Acts of the State of Texas and the United States, or such as would place appellees in a position where they could not invoke the aid of a court of equity in protecting such agreement?

"Question 3. If the District Court had the power and authority to enjoin the sale of tickets, as attempted in the decree, would it have any binding effect on any except the defendants in the suit, their servants, agents or employes?"

To the first question as broadly propounded, we give an affirmative answer. The answer is, however, subject to an important qualification which will be discussed later on in this opinion.

That one, who willfully and without legal justification or excuse interferes so as to bring about a breach of a contract between others, is guilty of an actionable wrong is no longer a question in this court. (Raymond v. Yarrington, 96 Texas, 443; Brown Hardware Co. v. Indiana Stove Co., 96 Texas, 453.) In the case of Mosher v. St. Louis, I. M. & S. R. Co. (127 U. S., 390) it was held that the purchaser of a ticket of a character of those in question in this case, who failed to identify himself as the original purchaser and to have his ticket stamped for return at the proper office, had no right to passage upon it. This clearly recognizes the validity of such a contract and the binding force of its conditions. It necessarily follows no transferee could acquire such a right for the reason that it would be impossible for him to comply with the condition by identifying himself as the original purchaser. We see no reason to doubt the correctness of these propositions. Nor do the Court of Civil Appeals seem to have any doubt upon these points; nor upon the further proposition that the pur-

chase and sale of nontransferable tickets which have already been issued may be enjoined. The question submitted by them for our decision, is merely whether it is proper for a court to enjoin dealers in railroad tickets from dealing in nontransferable tickets which may be issued in future.

The ·question has of recent years arisen in several cases in the state courts and in the courts of the United States, and it seems to us the great weight of authority supports an affirmative answer.

In Schubach v. McDonald, 179 Mo., 163, the very point was presented and it was there held that an injunction would lie to restrain the dealing in nontransferable excursion tickets, which might thereafter be issued. Two of the six justices dissented on that proposition. In the following cases from the Federal Courts the same doctrine is announced and applied: Nashville, etc., Ry. Co. v. McConnell (82 Fed., 65); Illinois, etc., Ry. Co. v. Caffrey (128 Fed., 770); Pennsylvania Co. v. Bay (138 Fed., 203); and in Louisville, etc., Ry. Co. v. Bitterman (144 Fed., 34). This last is a decision by the United States Circuit Court of Appeals at New Orleans; the other federal cases are decisions by trial courts. As opposed to this line of decisions, we are cited by the able counsel for appellants to but one case, which holds a contrary doctrine—New York Hudson River Central, etc., Railroad Company v. Reeves (85 N. Y. Supp., 28)—which we take to be the decision of a trial judge upon a preliminary motion for an injunction.

The jurisdiction of courts of equity grew out of the fact that courts of law were incapable of giving a plain, adequate and complete remedy in the particular case. Therefore it would seem the peculiar province of these courts to grant in cases of the character of that in question such relief as will afford a complete remedy for the wrongs of which complaint is made. Here we have a case in which the plaintiffs in the prosecution of their business are in the habit of issuing on various occasions for the accommodation of the public and the increase of their passenger traffic excursion tickets which provide for the going and return of the original purchaser, but which are expressly made nontransferable. On the other hand, according to the allegations of the petition, which presumably were found to be true, the defendants were engaged in, and advertised themselves as being engaged in, the occupation of dealing in railroad tickets, including the class of tickets in question in this suit. Now the effect of such dealing is to invite the purchasers from the ticket brokers to attempt to impose upon the railroad companies and to perpetrate a fraud upon them by personating themselves as the original purchasers and entitled to the benefit of the contracts. It is probable that many of the tickets will by reason of a limitation as to the time of return be good for a few days only, and to hold that the companies can only enjoin after the tickets are issued would be to deny any effective remedy whatever. Now the plaintiffs allege in effect, and have presumably proved, that they have been accustomed to issue, and as a part of their business will continue to issue, nontransferable tickets for passage at a reduced rate, and even if it were possible to enjoin the interference with the contract made by each ticket as it should be issued, it would be contrary to the rules and prac-

tice of courts of equity to require separate actions. They will try and determine the right in one action and, when necessary to avoid a multiplicity of suits, will grant relief by enjoining wrongful acts threatened to be committed, which, if committed, will lead to continuous litigation. It is only when tickets may be issued in future that the injunction acts upon such tickets and therefore we see no harm that can result to the defendants by enjoining dealing in such tickets, and when it is pleaded and proved, that such tickets are on sale and will be issued, we see no reason for holding that dealing in them may not be restrained. Any remedy short of that in the case as shown by the certificate of the Court of Civil Appeals would we think be neither adequate nor complete.

It seems to us that upon the question under discussion the case of Donovan v. Pennsylvania Company (199 U. S., 279) is somewhat in point. In that case the court held: "that the Pennsylvania Company could maintain a suit against hackmen combined together in disregard of its regulations, enjoining them from congregating upon the sidewalk adjacent to its terminal at Chicago so as to interfere with the ingress and egress of passengers." The court there say : "It only remains to inquire as to the competency of a court of equity to give the railroad company the relief it sought. The defendants insist that equity can not properly interfere. But the inadequacy of a legal remedy in such a case as this one is quite apparent. According to the record the attempt of the defendants, despite the objections of the company to use its stationhouse and depot grounds for the purpose of meeting passengers and soliciting their patronage, was of constant, daily, almost hourly occurrence. The case was one of a continuing trespass, involving injury of a permanent nature. A suit at law could only have determined the particular wrong occurring on a particular occasion, and would not reach other wrongs of like character that would occur almost every hour of each day, as passengers arrived at the station of the company. The same state of things existed in reference to such use of the sidewalk in front of the passenger station as unduly interfered with the rights of passengers arriving and departing. Only a court of equity was competent to meet such an unusual emergency, and by a comprehensive decree determine finally and once for all the entire controversy between the parties, thus avoiding a multiplicity of suits and conserving the public interests. No remedy at law would be so complete or efficacious as a suit in equity in such a case as this one." We think the case before us is one equally strong for equitable relief.

The case of the Board of Trade v. Christie Grain and Stock Co., decided by the same court (198 U. S., 236) is more directly in point. The character of the case is shown by the following extracts from the opinion: "The plaintiff was incorporated by special charter of the State of Illinois on February 18, 1859. The charter incorporated an existing board of trade, and there seems to be no reason to doubt, as indeed is alleged by the Christie Grain and Stock Co., that it then managed its Chamber of Commerce substantially as it has since. The main feature of its management is that it maintains an exchange hall for the exclusive use of its members, which now has become one of the

great grain and provision markets of the world. Three separate por-
tions of this hall are known respectively as the Wheat Pit, the Corn
Pit and the Provision Pit. In these pits the members make sales and
purchases exclusively for future delivery, the members dealing always
as principals between themselves, and being bound, practically at least,
as principals to those who employ them when they are not acting on
their own behalf. The quotations of the prices continuously offered and
accepted in these pits during business hours are collected at the plain-
tiff's expense and handed to the telegraph companies, which have their
instruments close at hand, and by the latter are sent to a great number
of offices. The telegraph companies all receive the quotations under a
contract not to furnish them to any bucket shop or place where they
are used as a basis for bets or illegal contracts. To that end they agree
to submit applications to the Board of Trade for investigation, and to
require the applicant, if satisfactory, to make a contract with the tele-
graph company and the Board of Trade, which, if observed, confines
the information within a circle of persons all contracting with the
Board of Trade. The principal defendants get and publish these quo-
tations in some way not disclosed. It is said not to be proved that
they get them wrongfully, even if the plaintiff has the rights which it
claims. But as the defendants do not get them from the telegraph com-
panies authorized to distribute them, have declined to sign the above
mentioned contracts, and deny the plaintiff's rights altogether, it is a
reasonable conclusion that they get, and intend to get, their knowledge
in a way which is wrongful unless their contention is maintained." It
is apparent, as we think, that the reports of the quotations which were en-
joined were given out daily and hourly; and it would seem ceased to be
useful in a very short time after they were promulgated. Therefore,
as we think, it is apparent from the nature of the case, that the quota-
tions, the interference with which were enjoined, were not in existence
when the suit was brought, but were such as were to be received by the
Board of Trade in future. This shows that courts of equity are not in
cases of this character bound by an inflexible technical rule; but will
administer relief commensurate with the threatened injury so as to give
a remedy adequate and complete.

The case of Tyroler v. Warden, so much relied upon in support of
the negative of the question, has in our opinion no bearing upon it.
This is seen by the opinion of the same court in Collister v. Hayman
(183 N. Y., 250) in which the court say: "Tyroler v. Warden, (157
New York, 116), relied upon by the appellant, is not analogous. We
there adjudged unconstitutional a statute which prohibited as a crime
the selling of transportation tickets by any person except common car-
riers and their specially authorized agents, insofar as it undertook to
prohibit citizens of the State from engaging in the business of brokerage
in passenger tickets. This case involves not a statute, but a contract,
which excludes no one from carrying on the business of selling theater
tickets, but simply prevents a sale thereof on the sidewalk in violation
of the express stipulation of the tickets themselves." Besides the deci-
sion in the Tyroler case is opposed to the great weight of authority.
Indeed it is said in effect by the Supreme Court of Washington in

In re O'Neill (83 Pac., 104) and by Mr. Freeman in his note to Jannin v. State (96 Am. St. Rep., 829-830) that the decision of the New York Court of Appeals stands alone and is opposed by numerous decisions of other courts of final resort.

But on the other hand we think the principles we have announced applicable to some tickets to be issued in future, but not to all. When a railroad company has determined upon selling tickets at a reduced rate for a particular occasion good for a return trip but nontransferable, and have so advised the public and placed such tickets upon sale, then in our opinion the company has the right to enjoin dealing in the return tickets. In such a case there is a live issue and a threatened injury which is imminent. But when tickets of the character designated are not upon sale, to enjoin dealing in such as may thereafter be issued as occasions may arise, savors of action appropriate to the legislative branch rather than to the judicial department of the state government. It seems to us that the railroad companies have an adequate and complete remedy by enjoining dealing in tickets which are on the market for sale, without interference as to those that have not been, but may thereafter be offered for sale. This sufficiently indicates, what we think a proper qualification upon an affirmative answer to the first question certified. Some of the authorities cited in support of the main proposition just discussed go further, but we are not content to follow them to their full extent.

We understand by the words in the second question certified: "Were the agreements alleged to exist between the railroads and various associations and citizens of San Antonio" to refer to the allegations of the petition as shown by the following paragraph of the certificate: "That, at the request of various associations and various citizens of San Antonio, appellees made special low rates, varying from one and one-half to two cents per mile to and from San Antonio, for the Spring Carnival and other occasions in that city and elsewhere and purpose to continue to do so in the future." The allegation admits of the reasonable inference that the request of the associations and citizens mentioned was acceded to by the plaintiff companies and this would amount to an agreement. But we see nothing in such an agreement, which contravenes the provisions of the "anti-trust laws," either of the State or of the United States. We are pointed to no provision of either our law or of the Act of Congress which forbids railroads from issuing nontransferable excursion tickets at a reduced rate for a return passage. From the well known fact that it had been the custom of railroad companies to issue tickets of the character of those in question for many years, it might well be argued that if the Legislature of this State or the Congress had desired to prohibit the practice, they would have said so in such terms as would leave no reasonable doubt as to their meaning.

There is no agreement or combination between the companies so as to restrain competition between them as to the reduced rate alleged. That the purpose of the companies in making the tickets nontransferable was to maintain the legal rate of three cents per mile as to persons who did not purchase the excursion tickets, is a purpose sufficiently obvious from the transactions themselves without any allegation to that effect.

But that such purpose does not make the transaction illegal seems to us clear from the authorities cited in the discussion of the first question.

In Kinner v. Lake Shore Railway Company (69 N. E. Rep., 614) the Supreme Court of Ohio held that even if such tickets were illegally issued, it was no obstacle to granting an injunction in a case like this; and in the case of the Board of Trade v. Stock Company, supra, the Supreme Court of the United States act upon the same principle. But we do not reach that question and therefore express no opinion upon it.

We are of opinion that the determination of the third question is not necessary to the decision of the case. The rights of persons not parties to the action can only be determined in some proceeding to which they are parties. Therefore we decline to give an answer to the question.