**TIDAL WESTERN OIL CORPORATION v. SHACKELFORD et al. (No. 11817.) ***

Court of Civil Appeals of Texas. Fort Worth. May 28, 1927.

Rehearing Denied July 9, 1927.

Torts &#9758;12—Act of defendant in notifying one negotiating for purchase of oil from plaintiff of its rights held not unlawful interference with contract.

Where owner of interest in oil and gas lease joined with others in assignment to defendant and later assigned his interest in lease to plaintiff, who negotiated with third person for sale of his interest in oil run, defendant's action in advising such third person of its claim to oil *held* not unlawful interference with contract, authorizing damages in plaintiff's favor for refusal of third person to continue taking oil from plaintiff, since acts of interference to be actionable must have been knowingly done without right or justifiable cause.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Action by F. L. Shackelford and others against the Tidal Western Oil Corporation. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Bonner, Bonner & Fryer, of Wichita Falls, for appellant.

Carrigan, Britain, Morgan & King and Weeks, Morrow, Francis & Hankerson, all of Wichita Falls, for appellees.

CONNER, C. J. This appeal is from a judgment in favor of F. L. Shackelford against the appellant, the Tidal Western Oil Corporation, for the sum of $3,031.99. In view of the conclusions reached by us, we shall omit in our statement of the case many of the details exhibited by the testimony and voluminous pleadings of the parties, and set forth only such pleadings and evidence as we deem necessary to an understanding of our conclusions.

So proceeding, this litigation is founded on the following material facts: On the 16th day of May, 1924, R. T. Couch, E. E. Fuller, Amos K. Bass, J. D. Abbott, and F. J. Holmes were the owners of a seven-eighths working interest in a certain oil and gas lease covering 50 acres of land situated in Wichita county. The interests of the parties named were owned in severalty and not jointly, Couch so owning a five-eighths interest, Fuller, Bass, and Abbott each so owning a one twenty-fourth interest, and Holmes so owning the remaining one-eighth interest.

On said 16th day of May, 1924, Couch, Fuller, Bass, Abbott, and Holmes duly executed a written contract or assignment, wherein it was agreed that said parties would sell and deliver to the appellant, Tidal Western Oil Corporation, "all fresh run, merchantable, crude oil produced from said property during the period commencing May 16, 1924, and ending December 31, 1926; and agreed that title to all of said oil should pass to second party (Tidal Western Oil Corporation) upon delivery of same into the pipe line or pipe lines connected to the stock tanks or tanks on said lease." The terms of the sale, including particulars in time and method of payment, are not questioned and will not be stated. The contract, however, provided that the said oil corporation should connect its pipe lines to the stock tanks on said lease and receive the oil at the connection with the tanks. The contract gave the oil corporation the right of ingress and egress over the lease and to connect its pipe lines with the supply tank and provided that the obligations should "be considered as covenants running with the oil and the leasehold estate thereby created and binding upon the heirs and legal representatives, successors, and assigns of Couch et al."

Pursuant to the contract so made, the appellant corporation connected its pipe lines with the oil supply tank situated upon the lease, which was oil producing, and received and continued to receive and pay for, in accordance with the terms of the written contract of May 16, 1924, all the oil produced upon the lease until on or about the 27th day of June, 1925, when, for a valuable consideration stated, R. T. Couch assigned his interest in the oil lease mentioned to appellee F. L. Shackelford. Within comparatively a few days thereafter, F. L. Shackelford entered into negotiations with representatives of the Panhandle Refining Company, which resulted in an oral agreement, to be later reduced to

---

writing, but which was never done, by the terms of which Shackelford sold his interest in the oil run from the lease in question for a period of two years at the ruling market price, which the appellant company was paying, plus a premium of 25 cents per barrel. Pursuant to this agreement, Shackelford, personally supervising the work, disconnected the pipe line of the appellant company from the supply tank, and in its place connected the pipe line of said Panhandle Refining Company.

The testimony of Mr. Chambers, of the refining company, was to the effect that, by the terms of the agreement with appellee Shackelford, the Panhandle company was to receive all the oil from the lease, assuming the burden of making satisfactory arrangements with other owners, and that his company, in fact, did receive and appropriate all the oil from the lease for several days and until notified by the appellant company of its claim of a right to the oil, whereupon the Panhandle Company refused to further comply with its agreement to take the oil. After the refusal of the Panhandle Refining Company to continue taking the oil, the appellee Shackelford again connected the pipe line of appellant company with the supply tank and said appellant has since been receiving and paying for the oil in accordance with its written contract hereinabove mentioned.

The refusal of the Panhandle Refining Company to continue taking oil and paying premium therefor was thus brought about: The representatives of the appellant company within a few days thereafter learned of the fact that the appellee Shackelford had disconnected its pipe line as hereinabove stated and thereupon addressed the following letter to the Panhandle Refining Company:

"1925 Jul 6 AM 10 16
"DB173 55 Tulsa Okla 6 930A Panhandle Refining Co. Pipe Line Department Wichita Falls, Texas
We are advised you are making connections with R T Couch Oil Company lease on fifty acres J W Robertson three hundred twenty acre survey Wichita County stop You are notified we claim this oil under contract of purchase to December Thirty First Nineteen Twenty Six and are insisting on delivery under terms of contract.
.  "Tidal Western Oil Corpn."

The letter was duly received, and, as already stated, 'the Panhandle Refining Company immediately refused to further comply with its agreement with appellee to take the oil from the lease. This letter constitutes the sole act of interference by the appellant.

In its final analysis, the theory upon which the judgment rests is that the letter above quoted and received by the Panhandle Refining Company constitutes such an unlawful meddling in and interference with the contract between the refining company and appellee as authorizes the imposition of the damages assessed in appellees' favor which result-

ed as a consequence of the refusal of the refining company to continue taking oil and to pay the stipulated premium therefor. In support of the theory suggested, appellee cites 15 Ruling Case Law, pp. 56, 57, par. 17, and page 63, par. 24; Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914, referred to with approval in Brown Hardware Co. v. Indiana Stove Works, 96 Tex. 453, 73 S. W. 800; Lytle v. G., H. & S. A. Ry. Co., 100 Tex. 292, 99 S. W. 396, 10 L. R. A. (N. S.) 437; Bowen v. Speer (Tex. Civ. App.) 166 S. W. 1183.

The following is quoted from 15 R. C. L. p. 63, par. 24:

"A prima facie case of wrongful interference with a contract is made out if there are alleged: (1) Intentional and willful acts; (2) calculated to cause damage to plaintiffs in their lawful business; (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulting."

The following, from the case of Lytle v. G., H. & S. A. Ry. Co., supra, is also urged:

"That one who willfully and without legal justification or excuse interferes so as to bring about a breach of a contract between others is guilty of an actionable wrong is no longer a question in this court."

The quotation from R. C. L., and the decisions in the Texas cases above noted, treat of the sufficiency of the allegations to constitute actionable wrong in preventing the execution of a contract with another, but assuming, as we have done, that appellee's petition is good as against the general demurrer urged against it, we find nothing in the authorities cited in behalf of appellee upon which, under the facts, we can sustain the judgment in his favor. It may be conceded for the purposes of argument that it is not necessary in every case that the party interfering shall have acted with malice, express or implied, but we think it must certainly be held, as indicated in the quotations above from R. C. L., and from the case of Lytle v. G., H. & S. A. Ry. Co., that the acts of interference to be actionable must have been knowingly done without right or justifiable cause. In this case it is undisputed that appellant had a valid contract with the owners of the oil, including appellee's assignor, under and by virtue of which they were entitled to at least the oil owned by Fuller, Bass, Abbott, and Holmes, amounting to two-eighths of the whole. There is no pretense that this was transferred to the Panhandle Refining Company by appellee's assignment, said owners of this two-eighths interest not having joined in the conveyance, nor is there any evidence whatever tending to show that they consented to the transfer; nor is there a pretense in the evidence that the acting rep-

resentatives of appellant company in writing the letter above copied to the Panhandle Refining Company acted with malice or spite, or with any other purpose than to assert a lawful right. It would be a strange doctrine indeed to hold that a person having a well grounded and justifiable belief of a right in or to property may be held liable in damages because of an assertion of such right.

In the case of Hardin v. Majors, 246 S. W. 100, the Court of Civil Appeals at Amarillo had the subject under discussion, and we approve the ruling of that court as indicated by the following quotation from the headnotes:

"A party to or interested in a contract may by legal proceedings or otherwise in good faith interfere with its execution where there is a bona fide doubt as to his rights under it."

Indeed, it has more than once been held in this state that the assertion of a legal right affords no foundation for a recovery of damages, even though it be with malice. See Knowles v. Gary & Burns Co. (Tex. Civ. App.) 141 S. W. 189, and cases therein cited.

In 26 R. C. L. p. 757, par. 6, it is said, among other things, that:

"The proper exercise of a legal right cannot constitute a legal wrong for which an action will lie."

In 12 R. C. L. p. 237, par. 8, it is said:

"There is no fraud where there is nothing wrong, and fraud cannot be deduced or inferred from that which the law pronounces honest. Nor can it be predicated upon acts which the party charged has a right by law to do, provided he pursues such right by lawful means, nor upon the nonperformance of acts which by law he is not bound to do, whatever may be his motive, design, or purpose, either in doing or not doing the acts complained of."

We conclude, without discussion of numerous other questions presented, that the appellant company, in writing the letter that it did under the circumstances stated, was within its lawful right, and it appearing that no other act on its part or in its behalf was done upon which the judgment in this case can be based, the judgment below must be reversed and here rendered for appellant, and it will be so ordered.