**John F. RYAN, Appellant,**

v.

**Fernando D. LAUREL, Jr., Appellee.**

**No. 04–90–00223–CV.**

Court of Appeals of Texas,
San Antonio.

April 3, 1991.

Ted Hollen, El Paso, Teresa A. Hunter, Laredo, for appellant.

Stephen W. Boyd, Law Office of Stephen W. Boyd, P.C., San Antonio, for appellee.

Before BUTTS, CARR and GARCIA, JJ.

---

## OPINION

BUTTS, Justice.

John. F. Ryan appeals the judgment in favor of Fernando D. and Lorraine Laurel (Laurel) following a jury verdict that Ryan tortiously interfered with the contract between Laurel and Dynamic Production, Inc.[1] We reverse and render.

Ryan brings six related points of error: the trial court should have granted his motion for directed verdict since filing the present suit cannot constitute tortious interference with a contract; the directed verdict should have been granted because there is no evidence or insufficient evidence to support the claim of tortious interference; questions four and five (relating to tortious interference and resulting damages) should not have been submitted to the jury, over objection, for insufficiency of evidence, both legally and factually; the jury's answers to questions four and five are against the great weight and preponderance of the evidence [2]; the motion for judgment should have been granted because there is no evidence that Ryan acted maliciously.

Several years ago Ryan sued Laurel over the disputed character of a mineral deed from Laurel to Ryan. This disagreement resulted in a Settlement Agreement between the parties in 1982. The Settlement Agreement plays a major role in the present case. Pursuant to the terms of that Agreement, Laurel paid Ryan $18,-000.00. Ryan then deeded back the mineral interests and received a royalty deed. The Settlement Agreement contains restrictive pooling provisions.

Ryan learned that Dynamic and Laurel had entered into a lease, and Dynamic had drilled some producing gas wells. It is Ryan's contention that Laurel breached the Settlement Agreement by violating its terms, specifically the pooling restrictions.

Ryan first filed a motion to enforce the Settlement Agreement, and the present suit was the eventual result.

As part of the present lawsuit, the trial court first granted a partial summary judgment, ruling that the 1982 Settlement Agreement "is fully binding on the parties thereto and determinative of their respective rights and interests in the lands which are the subject of this lawsuit, *all without prejudice to the right of John F. Ryan to allege in this lawsuit his claim for damages for any possible breach of the Settlement Agreement."* (emphasis supplied) After the trial court severed other causes of action between the numerous parties to this same action, only Ryan's claim for breach of the Settlement Agreement and Laurel's counterclaim for tortious interference with their contract with Dynamic Production continued in this trial.

It was Ryan's allegation, among others, that the gas lease between Laurel and Dynamic Production did not contain the required pooling clause as set out in the Settlement Agreement, therefore the pooling, as it was done, violated the Agreement and deprived Ryan of his proportionate share of the production from each of the gas wells. It was shown that Laurel agreed with the adjoining landowner, Fernando's mother, to pool two wells with her property. Ryan alleged this resulted in not fully developing the acreage covered by his royalty deed, thus depriving him of royalties. Dynamic interpleaded, depositing monies from production into the court's registry and refusing to distribute monies to Laurel or any other royalty owner. (The record shows that a substantial amount of royalty monies was later ordered distributed to Laurel, Ryan, and others.)

The trial court submitted seven questions to the jury. The jury was asked if they found that Laurel did not include the pooling restriction clause required by the Set-

---

1. Although there are other matters and parties at the trial level, those matters and parties have been severed from the present cause and are not relevant to this appeal.

2. Although appellant properly preserved factual insufficiency arguments in a motion for new trial, he refers incorrectly to his motion for judgment n.o.v. as supporting this point of error. *See* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361, 366 (1960).

tlement Agreement in its Dynamic Production lease, and if such failure, if any, constituted a breach of the contract. The jury answered, "No," and failed to find damages or attorney fees for Ryan in questions two and three.

The answers *to questions four and five* form the basis of this appeal:

Question No. 4: Do you find that the Plaintiff Ryan tortiously interfered with the Defendants' Laurels lease agreement with Dynamic Production, Inc. which was a producing cause of damages to the Laurels?

Answer: <u>Yes</u>

Question No. 5: What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Defendants Laurel for their losses, if any, resulting from the interference in the Laurels lease agreement with Dynamic Production, Inc., if any, by Plaintiff Ryan?

Answer: <u>$65,000</u>

Judgment was entered that Ryan tortiously interfered with the lease agreement and Laurel was awarded $65,000. Ryan filed a motion for judgment notwithstanding the verdict, alleging his action was brought to compel compliance with the Settlement Agreement, and that the contract itself showed that Laurel failed to include the required pooling clause in Laurel's lease agreement with Dynamic. Ryan stated the only action of tortious interference alleged by Laurel was the filing of this suit, which as a matter of law would not constitute interference with contractual relations. He further alleged that this suit resulted in a substantial settlement in favor of Ryan by Dynamic. "Under such facts, the mere filing of this cause of action could not constitute interference ..."

In his motion for judgment n.o.v. Ryan also stated that there was no evidence to support the jury's response to questions four and five, *supra,* as well as questions six and seven. In his motion for new trial Ryan argued there was factually insufficient evidence to support the responses. The trial court agreed as to questions six and seven. It modified the judgment, setting aside the finding of "actual malice" in

question six and the award of $60,000, as exemplary damages in question seven. The modified judgment states: "It appearing to the Court that there is no evidence of probative force to sustain the [questions six and seven] findings of the jury, judgment should be rendered ... notwithstanding the ... findings." Laurel has not filed a brief on appeal and does not contest the trial court's action. Therefore, the action of the trial court, with which this court agrees, setting aside the finding of "actual malice" and award of exemplary damages, is affirmed.

The jury was instructed on tortious interference as follows:

You are instructed that to establish a claim of tortious interference Defendant [Laurel] must show that Plaintiff [Ryan] maliciously interfered with the Contractual relationship without justification.

You are further instructed that one is privileged to interfere with the contract of another if it is done in a bona fide exercise of his own rights or if he has an equal or superior right or a well founded belief of his rights in the subject matter to that of the other.

Laurel was the cross-plaintiff in the counterclaim of tortious interference and had a plaintiff's burden of proof. *Sterner v. Marathon Oil Co,* 767 S.W.2d 686 (Tex. 1989) promulgated the correct burden of proof in tortious interference cases:

The party asserting the privilege does not deny the interference but rather seeks to avoid liability based upon a claimed interest that is being impaired or destroyed by the plaintiff's contract. Such defenses, which constitute a confession and avoidance, are affirmative in nature. TEX.R.CIV.P. 94. Therefore, we conclude that the privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has the burden of proof.

*Id.* at 689–90. The previous Texas law that lack of justification or excuse should be viewed as an element of the plaintiff's right of recovery and placing the burden upon the plaintiff was overruled in *Ster-*

*ner.* We note, however, the present trial occurred shortly after publication of *Sterner.* The burden to show justification was thus on Ryan, the cross-defendant in the tortious interference claim.

*Tidal Western Oil Corp. v. Shackelford,* 297 S.W. 279 (Tex.Civ.App.—Waco 1927, writ ref'd), involved a contract between a pipeline company (Tidal) and owners of mineral interests. One of the owners assigned his interest to Shackelford, who entered into an oral contract with a second pipeline company. The pipeline of Tidal was disconnected by Shackelford from the supply tank and the second company's pipeline was connected instead. When the second company was notified within a few days of Tidal's claim, the second company immediately disconnected its pipeline, and Tidal after that time received and paid for the oil in accordance with its written contract. Shackelford sued Tidal for tortious interference with the contract with the second pipeline company.

The Waco court wrote that the letter written by Tidal to the second pipeline company notifying it of Tidal's claim to the oil under the contract and which led to the second company disconnecting its pipeline constituted the *sole act of inteference by Tidal.* The court agreed that tortious interference with a contract is a recognized cause of action in Texas:

> That one who willfully and without legal justification or excuse interferes so as to bring about a breach of a contract between others is guilty of an actionable wrong is no longer a question in this court.

*Tidal Western Oil Corp. v. Shackelford,* 297 S.W. at 280, quoting from *Lytle v. G., H. & S.A. Ry. Co.,* 100 Tex. 292, 99 S.W. 396 (1907). The court held that the acts of interference to be actionable must have been knowingly done without right or justifiable cause. It stated that there was no evidence that the appellant company in writing the letter acted with malice or spite or with any other purpose than to assert a lawful right. It would be a strange doctrine indeed, wrote the court, to hold that a person having a well grounded and justifi-able belief of a right in or to property may be held liable in damages because of an assertion of such right.

The court then approved this ruling of *Hardin v. Majors,* 246 S.W. 100 (Tex.Civ. App.—Amarillo 1923, no writ):

> A party to or interested in a contract may by legal proceedings or otherwise in good faith interfere with its execution where there is a bona fide doubt as to his rights under it.

*Tidal Western Oil Corp. v. Shackelford,* 297 S.W. at 281. The court also pointed out that, indeed, it has more than once been held in this state that the assertion of a legal right affords no foundation for a recovery of damages, even though it be with malice. (citations omitted) *Id.* Further, it was stated that the proper exercise of a legal right cannot constitute a legal wrong for which an action will lie. (citation omitted) *Id.*

In the present case Ryan had a justifiable right under the law which he could pursue by lawful means. He could bring suit to determine whether the Settlement Agreement had been breached when Laurel entered into the contract with Dynamic Production Company in what Ryan in good faith believed to be a contravention of the pooling provisions of that contract between Laurel and Ryan. This was the proper exercise of a legal right and it could not constitute the basis of a claim for tortious interference of the contract between Laurel and Dynamic. (The record discloses that Ryan did recover a substantial amount from Dynamic as the result of this suit.)

We conclude that Ryan, in filing suit against Laurel, was asserting his lawful right and demonstrating his bona fide doubts as to his rights under the contract with which he interfered. We hold there was legal justification as a matter of law in this case. We sustain points of error one and six. This disposition obviates the necessity to address the remaining points of error (insufficiency of the evidence, both legally and factually, to support the jury's answers to questions four and five and no evidence to support the claim of tortious interference.)

The judgment is reversed and rendered that Laurel take nothing.