The Greyhound Corporation and New England Greyhound Lines, Inc., Respondents, *v.* Commercial Casualty Insurance Company and The First Reinsurance Company of Hartford, Defendants, Impleaded with Bowes & Awtry, Inc., and John H. Awtry, Appellants.

First Department, April 19, 1940.

*Charles H. Tuttle* of counsel [*Breed, Abbott & Morgan*, attorneys], for the appellants.

*Milton B. Ignatius* of counsel [*Edward McFadden, Jr.*, and *Joseph S. Catalano* with him on the brief; *Ignatius & Stone*, attorneys], for the respondents.

O'MALLEY, J. Is an agent who, acting generally within the scope of his authority, induces his principal to breach a contract, liable in damages to the other party to the contract? The question arises in connection with a motion to dismiss plaintiffs' third cause of action. Briefly summarized, its allegations establish these facts:

Defendant Commercial Casualty Insurance Company (hereinafter called " Commercial ") issued a policy of public liability insurance in favor of plaintiff The Greyhound Corporation. Commercial's liability ran not only to the named assured but to its subsidiaries or affiliates, of which plaintiff New England Greyhound Lines, Inc., is one. The policy provided that Commercial would not be liable for injury to, or the death of, any person caused by the act of one employed by the assured " Contrary to law."

Defendant First Reinsurance Company of Hartford assumed the liabilities of Commercial by way of reinsurance and covenanted further to reinsure with Lloyds of London. The corporate defendant Bowes & Awtry, Inc., was by the policy made the agent of Commercial in all matters concerning the adjustment, settlement or litigation of any claim, but was prohibited from settling or adjusting without the consent of the assured. The individual defendant John H. Awtry was the vice-president of Bowes & Awtry, Inc., and the president of defendant First Reinsurance Company.

The first cause of action is directed against the two insurance companies solely, and seeks recovery in the amount of damages sustained by plaintiffs arising out of a motor bus accident on September 20, 1937, in Connecticut in which passengers were injured. The gravamen is that defendant Commercial wrongfully repudiated its obligation under the policy, and damages in the sum of $307,205.42 are sought.

The second cause, likewise directed against the defendant insurance carriers, is predicated on the theory that, even if the plaintiffs were not covered by the policy, Commercial had committed acts amounting to waiver respecting coverage and is estopped to deny liability.

The cause of action here under consideration is directed against the individual defendant Awtry and the corporate defendant Bowes & Awtry, Inc., and is predicated on the ground that at a time when

Bowes & Awtry, Inc., had full knowledge of all, or substantially all, of the facts and circumstances set forth in a notice of disclaimer later written by the attorneys for Bowes & Awtry, Inc., as manager of Commercial, said defendants nevertheless had reported to plaintiff, The Greyhound Corporation, that the insurers had accepted responsibility for all claims arising out of the accident and made demands upon said plaintiff concerning a defense of the claims. There had been full compliance with these demands.

In or about February, 1939, the defendants Awtry and Bowes & Awtry, Inc., induced the carriers to repudiate and breach their agreements by wrongfully, maliciously and falsely representing to them that a violation of law in the operation of the motor bus had come to their knowledge for the first time in January or February, 1939, and that the acts of Bowes & Awtry, Inc., as adjustment agent, theretofore taken, had been in ignorance of facts showing noncoverage. As disclosed in the notice of disclaimer, denial of liability under the policy was predicated on the claim that the driver of the motor bus had been on duty more hours than permitted under the laws of Connecticut and likewise contrary to similar provisions of law in Massachusetts and New York.

No allegation that the defendant insurance companies themselves did not know from the outset the facts upon which the disclaimer of coverage was thereafter predicated is contained in the complaint. Nor is it alleged that at any time the insurance carriers were not financially responsible, or that the defendants Awtry or Bowes & Awtry, Inc., profited in any way by the alleged deceit upon their principal.

Plaintiffs rely upon *Lamb* v. *Cheney & Son* (227 N. Y. 418) as sustaining this cause of action. That case, however, involved an action against a *stranger* to the contract and not as here against one who is an agent of the alleged defaulting principal and its *alter ego*. Distinguishable for like reason is *Lurie* v. *New Amsterdam Casualty Company* (270 N. Y. 379). Other cases relied upon by plaintiff such as *Laska* v. *Harris* (215 N. Y. 554) and *Passaic Falls Throwing Co.* v. *Villeneuve-Pohl Corp.* (169 App. Div. 727) apply to situations where the agent was held liable, not for inducing his principal to breach a contract with the plaintiff, but where the agent had participated in a fraud upon the plaintiff in inducing the contract or had been guilty of conversion against the plaintiff. In such instances, of course, the agent is liable personally for the independent tort.

Authorities here and elsewhere hold that a director or officer of a corporation may not be held liable where his corporation has been allegedly induced by him to violate its contractual obligation. These cases, moreover, all contain language stating that the

doctrine of the early English case of *Lumley* v. *Gye* (2 El. & Bl. 216) should not be extended to the situation here under consideration.

In *Said* v. *Butt* ([1920] 3 K. B. 497, 505, 506) it was stated, per McCARDIE, J., with respect to *Lumley* v. *Gye* (*supra*):

" I agree that the language is wide in its scope. The proposition is stated with unrestricted diction: that a person who without just cause knowingly procures a man to commit a breach of his contract with another, whereby the latter suffers pecuniary damage, is liable to an action for tort. But I conceive that none of the judges was thinking of such a case as the present. I have searched in vain for any decision which indicates that a servant is liable in tort for procuring a breach of his master's contract with another. *If such a cause of action existed, I imagine that it would have been successfully asserted ere this.* The explanation of the breadth of the language used in the decisions probably lies in the fact that in every one of the sets of circumstances before the court the person who procured the breach of contract was in fact a stranger, that is a third person, who stood wholly outside the area of the bargain made between the two contracting parties. If he is in the position of a stranger, he will be *prima facie* liable, even though he may act honestly, or without malice, or in the best interests of himself; or even if he acts as an altruist, seeking only the good of another * * *.

" But the servant who causes a breach of his master's contract with a third person seems to stand in a wholly different position. He is not a stranger. He is the *alter ego* of his master. His acts are in law the acts of his employer. In such a case it is the master himself, by his agent, breaking the contract he has made, and in my view an action against the agent under the *Lumley* v. *Gye* principle must therefore fail, just as it would fail if brought against the master himself for wrongfully procuring a breach of his own contract. * * *

" I hold that if a servant acting *bona fide* within the scope of his authority procures or causes the breach of a contract between his employer and a third person, he does not thereby become liable to an action of tort at the suit of the person whose contract has thereby been broken. * * * Nothing that I have said today is, I hope, inconsistent with the rule that a director or a servant who actually takes part in or actually authorizes such torts as assault, trespass to property, nuisance, or the like may be liable in damages as a joint participant in one of such recognized heads of tortious wrong." (Italics ours.)

The doctrine of *Said* v. *Butt* (*supra*) was approved in the later case of *Scammell & Nephew, Ltd.*, v. *Hurley* ([1929] 1 K. B. 419,

443). While relating to directors and officers of a corporation, similar expression of opinion is found in this jurisdiction (*Lukach* v. *Blair*, 108 Misc. 20; affd., *sub nom. Lukach* v. *Reigart*, 192 App. Div. 957; *Hicks* v. *Haight*, 171 Misc. 151).

We are of opinion, therefore, that except in such cases as involve individual and separate torts on the part of an agent such as assault, trespass, fraud, conversion, etc., he may not be held liable for inducing, in the course of his employment, the breach by his principal, and that the doctrine of *Lamb* v. *Cheney & Son (supra)* should not be extended to the present circumstances.

Under the authorities cited, the individual defendant Awtry could not be held liable as president of the defendant First Reinsurance Company of Hartford. He could not be held liable as vice-president of the defendant Bowes & Awtry, Inc., for the reason that the latter likewise is not liable. Neither Awtry nor Bowes & Awtry, Inc., committed an independent tort upon the plaintiffs such as fraud, conversion, trespass, etc. Their wrong, if any, was against their principals and not against the plaintiffs.

It follows, therefore, that the orders appealed from should be reversed, with ten dollars costs and disbursements to each appellant, and the motions to dismiss the alleged cause of action against the defendants Awtry and Bowes & Awtry, Inc., granted.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Orders unanimously reversed, with ten dollars costs and disbursements to each appellant, and the motions to dismiss the alleged cause of action against the defendants John H. Awtry and Bowes & Awtry, Inc., granted.