**VICTOR M. SOLIS UNDERGROUND UTILITY & PAVING CO., INC., et al., Appellants,**

v.

**CITY OF LAREDO, et al., Appellees.**

**No. 04–86–00502–CV.**

Court of Appeals of Texas, San Antonio.

April 20, 1988.

Rehearing Denied June 6, 1988.

Gerald Drought, Stephen P. Redgate, San Antonio, Jimmy Sandavol, Laredo, for appellants.

William Gamble, San Antonio, Anthony McGettrick, City Attorney's Office, Donato Ramos, Laredo, for appellees.

Before CADENA, C.J., and BUTTS and CHAPA, JJ.

## OPINION

BUTTS, Justice.

Victor M. Solis Underground Utility and Paving Co., Inc. and Victor M. Solis, indi-vidually, (Solis) originally sued the City of Laredo, Marvin Townsend, Amador Es-cudero, Baldmero Ortiz, Jack Van Horn, and Lockwood, Andrews and Newnam, (LAN) for breach of contract, harassment, conspiracy, tortious interference with con-tractual relationship, and defamation. The City of Laredo counterclaimed for breach of contract. During trial Solis dismissed, with prejudice, all causes of action against Townsend, Escudero, and Ortiz. Solis also dismissed all causes of action against the City of Laredo, except a claim for damages resulting from the City's alleged breach of contract. The breach of contract actions were tried to the jury.

At the close of Solis' evidence, the trial court directed verdicts in favor of appellees Jack Van Horn and LAN. The court then submitted special issues to the jury relat-ing to Solis' claim against the City for breach of contract. The court also sub-mitted issues regarding the City's counter-claim for breach of contract. Based on the jury's findings, the court entered judgment that Solis take nothing in his breach of contract claim and further, that Solis pay the City $136,500.00 for damages in its breach of contract counterclaim and attor-ney's fees.

This case stems from a contract between Solis and the City whereby Solis agreed to construct a storm sewer system known as the Mother Cabrini Project. The company began work on the project in January, 1984. After several months with continu-ing delays and disputes concerning the quality of the work, Van Horn, engineer-employee of LAN, the City's consulting engineer on the project, recommended that the City order Solis to suspend work on the drainage project.

Solis obtained a temporary injunction, but that order was suspended. Solis filed for bankruptcy shortly thereafter. The City subsequently terminated the contract and completed the project using City em-ployees. The instant suit resulted.

Solis argues in the first point of error that the trial court erred in directing a

verdict in favor of Van Horn and LAN. We disagree.

A defendant is entitled to a directed verdict only if reasonable minds cannot differ in their conclusion that the plaintiff failed to establish a cause of action against it. *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex.1982). Further, we must consider all the evidence in the light most favorable to the plaintiff, disregarding all contrary evidence and inferences.

■ Solis went to trial on two causes of action against Van Horn and LAN: one for tortious interference with a contractual relationship, the other for conspiracy. To establish a cause of action for tortious interference, the claimant must show (1) that the defendant maliciously interfered with a contractual relationship and (2) the defendant did so without legal justification or excuse. *Sakowitz v. Steck*, 669 S.W.2d 105, 107 (Tex.1984).

The Texas Supreme Court in *Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex. 1983), held that:

> An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. [Citations omitted] The essential elements are: (1) two or more persons; (2) An object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

*Id.* at 934.

The evidence shows that the City hired LAN with its employee, Van Horn, to serve as the project's consulting engineer. *Under its contract with the City* LAN was obligated to continuously inspect the contractor's work and report any failures of the work or materials to conform to the project specifications. The contractor was informed in its contract with the City of this duty to inspect.

Van Horn served as the project engineer for the Mother Cabrini work. He helped the City select the contractor, drafted the plans, and was responsible for overseeing the project through completion. Ortiz was City Inspector and worked as an on-site inspector under the direction of Van Horn.

Solis alleged that Van Horn and Ortiz went beyond the scope of their contract with the City and sought to prove that Van Horn conspired with Ortiz to harass appellant into breaching its contract with the City.

Solis testified that on numerous occasions Ortiz would disrupt the work at the work site. He maintained that Ortiz would hinder Solis' ability to perform the contract. Other testimony came from Reynaldo Roberto Esparza, Ortiz' former son-in-law. During direct examination Esparza testified:

Q: ... Did Mr. Ortiz ever tell you anything during this period of time that Mr. Van Horn said to him?

A: Mr. Ortiz told me that they had told him to put pressure on Mr. Solis. That's what he told me.

Q: Was this at the time that the Mother Cabrini job was going on?

A: Yes.

Q: This is what—I know this is a little confusing.
This is what Mr. Ortiz told you that Mr. Van Horn had told him:

A: Yes.

Q: Did he tell you what kind of pressure?

A: Well, the way he told me, between all of them, they had a plan to put pressure on Mr. Solis so that Mr. Solis, during the project, would get angry, so he would commit something, so from there they could get a hold of him. Because their plan was that—

\* \* \* \* \* \*

A: So that he can be removed from the project.

\* \* \* \* \* \*

Q: You used the term "all of them," Mr. Esparza. What do you mean by "all of them?" Who do you mean?

A: Amador Escudero, Marvin Townsend, Jack Van Horn, and the other one, what's his name?

\*    \*    \*    \*    \*    \*

Ortiz denied any such plan existed. Moreover, since Ortiz was no longer a party to the suit, this was clearly hearsay as to Van Horn, and the objection should have been sustained. There was evidence that much of the work of Solis did not meet the plans and specifications, that Solis would not cooperate with supervisors on the job, nor even later with the supervising engineer appointed by the bankruptcy court.

Ortiz testified that Solis failed to turn in any schedule of work progress as required and that work (laid pipes) would be covered up before he could inspect it. He testified that on one occasion there was no superintendent on the project. At Van Horn's instruction, Ortiz would send letters of notice to Solis showing the construction contract terms were not being met. He stated that as inspector he had the right "in the specifications book" to stop the work if something was wrong. Ortiz at first gave the letters of notice to Solis' worker who in turn handed them to Solis. He said that instead of putting the letters in the records, Solis threw them away. Ortiz then gave the notice letters to Solis in the office. Both Van Horn and Ortiz denied there was a plan by anyone to put pressure on Solis to cause the project to be ended unsuccessfully.

### TORTIOUS INTERFERENCE

Not all interferences with contractual relations are tortious in nature.

■ An important element in a right of recovery for contract interference is that the interference must be without right or justification. Interference with contractual relations is privileged where it results from the bona fide exercise of a party's own rights *or* where the party possesses an equal or superior interest to that of the plaintiff in the subject matter. *Black Lake Pipe Line Company v. Union Construction Company, Inc.,* 538 S.W.2d 80, 91 (Tex.1976), *citing Terry v. Zachry,* 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.); 45 Am.Jur.2d *Interference* § 27 (1969), at 304–305.

■ In this case the consulting engineer employed by the City to oversee the project had the absolute right to reject work which did not meet contract specifications. This would not be evidence of malicious behavior, which is a necessary element of proof. The consulting engineer (LAN) along with its employee on the project was not liable because the recommendation to terminate the contract with Solis was based on the engineer's superior contractual rights with the City and to protect those rights. Thus, the contractor was not entitled to recover against the City's consulting engineer for interference with contractual relations where the engineer was justified in exercising its superior legitimate interest by recommending termination.

The scholarly discussion of interference actions in *Terry v. Zachry, supra* at 160 is instructive. It distinguishes those instances when the interference is caused by *third party strangers,* called an exception to the general rule, and when the interference is caused by a *servant* or *agent,* citing *Greyhound Corporation v. Commercial Casualty Ins. Co.,* 259 App.Div. 317, 19 N.Y. S.2d 239, 242 (1940), which quotes from the English authority, *Said v. Butt,* L.R. 3 K.B. 497, which states:

> " 'But the servant who causes a breach of his master's contract with a third person seems to stand in a wholly different position. He is not a stranger. His acts are in law the acts of his employer. In such a case it is the master himself, by this agent, breaking the contract he has made, and in my view an action against the agent under the *Lumley v. Gye* principle must therefore fail, just as it would fail if brought against the master himself for wrongfully procuring a breach of his own contract. \* \* \* ' "

In the present case LAN and Van Horn were agents of the City. Just as an instructed verdict in favor of the City on the interference action would have been proper, because the cause of action must fail, so it was in the case of its agents. We have

no need to determine whether LAN, with Van Horn, was an independent contractor. Whether it was an independent contractor or not, it is plain that LAN, with Van Horn, was an agent of the City.

## COMMON LAW CONSPIRACY

■ Similarly no cause of action was proved against Van Horn and LAN for common law conspiracy. Such an action arises only where two or more persons, acting together, commit an unlawful act, or they accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co., supra* at 934. We hold it was not unlawful for Van Horn (as employee of LAN, the consulting engineer) to supervise the project as provided for in the contract with the City. There is no proof that Van Horn and Ortiz committed unlawful acts or that they used unlawful means to accomplish a lawful purpose. Solis' civil conspiracy claim must fail. We therefore hold that the trial court properly instructed verdicts for Van Horn and LAN. The first point is overruled.

## SUMMARY BUSINESS RECORDS

In the second point of error Solis argues the trial court erred in admitting in evidence one of the City's exhibits introduced to establish the City's damages for Solis' breach of contract.

It is argued the document was inadmissible because the person through whom the City sought to introduce the exhibit, the Public Works Director, admitted he had no personal knowledge of the contents of the document, and that the report was created in preparation for trial of this case. Objection was based on grounds that it contained hearsay and did not fall within any of the exceptions to the hearsay rule. TEX.R. EVID. 803.

The exhibit in evidence is a summary of costs to the City for completing the construction job after Solis' contract was terminated.

■ A summary of business records may be admitted into evidence upon proof that (1) the records summarized are volumi-

nous, (2) they have been made available to the opponent for a reasonable period of time to afford inspection and an opportunity for cross-examination, and (3) the supporting documents are themselves admissible in evidence. TEX.R.EVID. 1006; *Aquamarine Associates v. Burton Shipyard Inc.*, 659 S.W.2d 820, 821–822 (Tex. 1983); *Duncan Development, Inc. v. Haney*, 634 S.W.2d, 811, 812–13 (Tex.1982); *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 92–3 (Tex. 1976).

■ The Director of Public Works testified that he, along with other City employees, had prepared this cost summary. He testified that while he did not have personal knowledge of some of the underlying data, the summary was based on data kept in the usual course of the City's regularly conducted activity, and that it was the regular practice of the City to collect such data. He further testified that he had the underlying cost data presently available at trial.

Solis did not object to any of the underlying data or, as the record indicates, ask to examine it. Therefore, it may be presumed that all the underlying data was admissible. This being the case, the cost summary was properly admitted under Rule 1006 of the Texas Rules of Evidence as an exception to the hearsay rule. Rule 803(6). Point of error two is overruled.

In points of error three and four Solis maintains the trial court erred in submitting a special issue on damages based on the cost summary, and further, that judgment should not have been entered based on the jury findings. Because the summary was properly admitted as a business record exception to the hearsay rule, the trial court was correct in submitting the damages issue based thereon. The evidence thus adequately supported the findings of damages in favor of the City for breach of contract, and the judgment was properly entered. The points are overruled.

## EXCLUDING FORMER TESTIMONY

The fifth and sixth points are that the trial court erred in excluding the testimony

of Cesario Porras and Tim Donnell. Both testified at a prior temporary injunction hearing of the same case in June 1984. Solis argues the former testimony was germane to the *conspiracy* claim.

If a declarant is unavailable as a witness, Rule 806 of the Texas Rules of Evidence provides that testimony by that person at a former hearing is not excluded as hearsay if the party against whom the testimony is offered, "or a person with similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." TEX.R.EVID. 804(b)(1). All parties, including Van Horn but excepting LAN, were present at the hearing. The Rules of Evidence define "unavailable as a witness" to include a person who "is absent from the hearing and the proponent of this statement has been unable to procure his attendance or testimony by process or other reasonable means." TEX.R.EVID. 804(a)(5).

■ In the case of Cesario Porras, it was not shown that the proponent (Solis) was unable to secure Porras' attendance or testimony by process or other reasonable means. Porras lived in Laredo at the time of trial. A subpoena was issued three days before trial began, but the subpoena was never served on Porras. The deputy constable testified that the only attempts to contact Porras were made at his office between 1:00 p.m. and 5:00 p.m. No one tried to contact Porras at his residence. It was known for approximately two years prior to trial that Porras was a potential witness, yet his deposition was never taken. Under these circumstances, therefore, the trial court correctly excluded his former testimony. *See Hall v. White*, 525 S.W.2d 860, 861–862 (Tex.1975).

■ Solis more clearly demonstrated that Donnell was unavailable at trial. The record showed that despite significant efforts to locate Donnell over a substantial period of time, Donnell's whereabouts really were unknown. A close friend of Donnell's testified that he had not heard from Donnell in over a year, but the last he knew Donnell was in Austin. Solis tried without success to locate Donnell in Austin.

Donnell read a letter he had written to Solis at the temporary injunction hearing. It contained conclusory opinions about efforts to hinder appellant's ability to perform his contract. It contained no specific facts. Solis sought to introduce the same letter of Donnell at this trial. No other testimony of Donnell was offered in the bill of exceptions ... only the letter. We hold there was no error in excluding the letter. *See*, TEX.R.EVID. 103(a).

However, even if this were error, Solis admitted similar evidence was available through another witness, that is, the individual himself, Victor Solis. Moreover, he testified to facts whereas no specific facts were stated in Donnell's letter. Therefore, we hold the trial court's error, if any, in excluding the prior evidence, the letter, was harmless.

The judgment is affirmed.

CHAPA, Justice, dissenting.

I respectfully dissent.

The court concludes that the directed verdict in favor of Van Horn and his employer LAN was proper. I disagree.

Although the court correctly states the standard of review, they have failed to adhere to it. A directed verdict will be upheld only if reasonable minds cannot differ that the plaintiff failed to establish a cause of action after considering all the evidence favorable to the plaintiff and disregarding all contrary evidence and inferences. *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex.1982).

In accordance with this standard of review, the record reflects the testimony of Solis that

1) he got the contract in question under adverse circumstances, and only after agreeing to drop a law suit he had pending;

2) 16 days after the start of the project, his work was stopped by Van Horn for insufficient reasons causing unnecessary delays;

3) upon resuming work, he received little cooperation from Van Horn, who was the

project engineer, when faced with unforeseen problems on the job;

4) defective specifications set out by Van Horn caused unnecessary delays and problems;

5) he and his employees were consistently harassed, threatened, and even had their completed work intentionally tampered with by Ortiz, who was Van Horn's immediate subordinate and project inspector;

6) Ortiz admitted he was harassing Solis and his employees in compliance with orders from Escudero, the City Engineer;

7) the day after he received a letter from Van Horn admitting that Van Horn's specifications were inaccurate, he received a letter from Escudero ordering him to stop all work on the project which was a result of recommendations from Van Horn;

8) Van Horn's letter to Solis admitting the inaccurate specifications had no complaints about Solis' work and no suggestion that he should stop work on the project; and

9) the problems and delays on the job were caused by unforeseen problems or by Van Horn, Ortiz and other City agencies.

Reynaldo Roberto Esparza testified that

1) he was the former son-in-law of Ortiz, who was working for Van Horn;

2) Ortiz told him that he and Escudero, Townsend (City Manager), and Van Horn had a plan to put pressure on Solis until he could be removed from the project; and

3) a certain bonus check was paid to Ortiz presumably for putting the pressure on Solis which would cause his removal.

The record reflects evidence of a questionable agreement reached by Van Horn, Escudero, and Porras pertaining to the requirements to be imposed on Solis for relaying some pipe in the project in question. The agreement was questionable because it was reached in the absence of Solis, written by Van Horn, and reached on the same day Porras was appointed by the bankruptcy court to be an impartial independent engineer to make an independent impartial judgment as to what corrective measures were needed to be done by Solis on the project.

Also, the record reflects the General Provisions, Division C, Section 6, pg. C–14 of the Instructions to Bidders which provides that Ortiz, as the Project Inspector, although authorized to call attention to the contractor of work failures, "will in no case act as foreman or perform other duties for the Contractor, nor shall he interfere with the management of the work."

During the trial, the argument to the trial court which resulted in the directed verdict as to the tortious interference claim was that the actions of Van Horn and LAN were privileged and thus justified. The court's opinion not only embraces this argument but contends further.

Relying on *Greyhound Corporation v. Commercial Casualty Ins. Co.*, 259 App. Div. 317, 19 N.Y.S.2d 239, 242 (1940), the court concludes that the instructed verdict was justified because Van Horn and LAN were "agents of the City." *Greyhound Corporation* does hold that an action for tortious interference will not lie against a *servant* who while acting within the scope of his authority causes the breach of a master's contract. This is so, because a cause of action against the master for wrongfully procuring the breach of his own contract will not lie, but an action for breach of contract would be appropriate. However, *Greyhound Corporation* does not suggest that this "servant rule" applies in any way to an independent contractor.

We note that Van Horn and LAN argued to the trial judge that "there is no contractual relationship here" and "we're not a party to that contract [and] have no responsibility to Mr. Solis for that contract." Further, Van Horn and LAN never have contended during the trial or in their appellate briefs that they were servants of the City of Laredo. The City of Laredo and Victor M. Solis, Underground Utility and Paving Company, Inc. are the only parties to the contract in question. Also, the General Provisions, Division C. Section 6, pg. C–12 of the Instructions to Bidders which apply to all the parties herein provide that Van Horn, as the project engineer "will act

as referee in all questions arising under the terms of the contract between the parties thereto, and his decisions shall be final and binding." It is utterly inconsistent for a servant to act as a final impartial referee between his master and another and still be acting in the furtherance of his master's interests. Not only do Van Horn and LAN deny they are servants in the record, and fail to contend they are servants on appeal, but the record clearly shows them to be independent contractors which excludes them from the "servant rule" cited by the court.

The court then concludes that Solis' tortious interference cause of action against Van Horn and LAN must fail as a matter of law because the interference was privileged and thus justified. Respectfully, the reliance on *Black Lake Pipe Line Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80, 91 (Tex.1976) and *Terry v. Zachry*, 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.) is misplaced.

In *Terry*, the plaintiff alleged tortious interference of Mr. Zachry, Chairman of the Board for the H.B. Zachry Company, because Zachry induced the cooperation to contest an unliquidated claim. In sustaining a summary judgment favorable to Zachry, the court concluded that "[a] wilful refusal to pay an unliquidated claim is not the basis for a separate and independent suit against the corporate officers who induced such action. 62 C.J. *Torts* § 57, 86 C.J.S. *Torts* § 45." *Terry v. Zachry, supra* at 159, 160.

In *Black Lake*, Black Lake Pipe Line Co. entered into a prime contract with MPD for construction of 125 miles of pipeline. MPD entered into a subcontract with Union to provide construction of a 67 mile stretch of pipeline by a certain date. Because the work was behind schedule, Black Lake required additional men and equipment in accordance with the prime contract to accommodate the schedule. This require-

ment in turn forced MPD to require its subcontractor (Union) to furnish additional men and equipment. Union sued Black Lake for contract interference alleging the cost of additional men and equipment as damages. The Texas Supreme Court rejected the contract interference theory "because there [was] no allegation that Union's rights under its subcontract with MPD were affected by Black Lake's failure to furnish the line pipe." *Black Lake Pipe Line Co. v. Union Const., supra* at 91. However, we note that the issue of whether Black Lake's requirement for additional men and equipment was arbitrary and capricious was submitted to the jury by the trial court without any criticism from the supreme court.[1]

Clearly, these cases are distinguishable from the case before us. *Terry* and *Black Lake* are not directed verdict cases, and were decided on the basis of a defective cause of action in *Terry*, and defective pleadings in *Black Lake*. These cases do not support the holding of the court.

The case before us involves pleadings alleging tortious interference and civil conspiracy by Van Horn and LAN. And the evidence in the record favorable to Solis required that the issues be submitted to the jury.

That one who willfully and without legal justification or excuse interferes so as to bring about a breach of a contract between others is guilty of an actionable wrong is no longer a question in this court.

*Lytle v. Galveston, H. & S.A. Ry. Co.*, 100 Tex. 292, 99 S.W. 396, 397 (1907).

To establish the necessary elements of her claim of tortious interference, [Plaintiff] had to show (1) that the defendant maliciously interfered with the contractual relationship and (2), without legal justification or excuse.

*Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984).[2]

---

1. As in *Black Lake*, recent privileged interference cases have involved the submission of the privilege issues to the jury without criticism by the appellate courts. *Marathon Oil Co. v. Sterner*, 745 S.W.2d 420 (Tex.App.—Houston [14th

Dist.] 1988, no writ); *Rural Development, Inc. v. L.T. Stone*, 700 S.W.2d 661 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

2. Before *Sakowitz, Inc.*, the elements of a claim for tortious interference were: 1) that a con-

In sustaining the directed verdict on the basis that the actions of Van Horn and LAN were privileged, the court has concluded that as a matter of law, the actions of Van Horn and LAN were not arbitrary and capricious, were with legal justification and excuse, were a bona fide exercise of the rights of Van Horn, and were the actions of one possessing an equal or superior interest to those of Solis. It appears that under the circumstances of this case, issues of fact existed as to

1) whether the action of Van Horn and LAN were arbitrary and capricious and prompted by a conspiracy;

2) whether the actions of Van Horn and LAN were without legal justification or excuse;

3) whether the actions of Van Horn and LAN were a bona fide exercise of their rights;

4) whether Van Horn and LAN had an equal or superior interest to Solis, who unlike them, was an actual party to the contract in question.

Since these issues of fact were raised by the evidence favorable to Solis, the directed verdict as to the tortious interference was improper.

The court sustains the directed verdict as to the conspiracy claims of Solis because there was "no proof that Van Horn and Ortiz committed unlawful acts or that they used unlawful means to accomplish a lawful purpose."

The "no evidence" argument now embraced by the court as to the conspiracy claim was not argued to the trial judge in obtaining the directed verdict. However, a judgment may be sustained on grounds other than those apparently relied upon by the trial judge. But the evidence favorable to Solis, raises the question of whether Van Horn and Ortiz conspired to willfully and wrongfully bring about a breach of the contract. This has been declared "an actionable wrong" by the Texas Supreme Court, and is thus unlawful. *Lytle v. Galveston, supra.* Consequently since fact is-

---

tract existed that was subject to interference, 2) the act of interference was willful and intentional, 3) such intentional act was a proximate cause of the plaintiff's damages, and 4) actual damages or loss occurred. *Bellefonte Underwriters Insurance Co. v. Brown,* 663 S.W.2d 562, 573 (Tex.App.—Houston [14th Dist.] 1983), *modified,* 704 S.W.2d 742 (Tex.1986); *Armendariz v. Mora,* 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Sakowitz, Inc., supra* at 108 (Dissent).

If the Supreme Court intended to dramatically change the elements of tortious interference, it was accomplished rather undramatically. We note that the court's opinion fails to state that the elements are being changed or that any prior inconsistent cases are now overruled. In fact, the Court, in sustaining the summary judgment appears to agree with the dissent that privileged interference is still an affirmative defense stating:

> "We hold that Sakowitz [movant] made a showing of its legal justification, but Steck [non-movant] produced no summary judgment evidence to raise a fact question regarding the lack of justification...."

*Sakowitz, Inc., supra* at 107, 108.

An inconsistency appears in contending both, that the burden is upon the plaintiff to show that the interference by the defendant was without justification or excuse; and that also, the burden is upon the defendants in a summary judgment to show his actions were privileged and justified, as required of all cases involving affirmative defenses. Unless the elements of

tortious interference were in fact dramatically changed, the long established rule by the Supreme Court in determining affirmative defenses would clearly identify privileged interference as a "matter constituting an avoidance." TEX. R.CIV.P. 94; *W.L. Moody & Co. v. Rowland,* 100 Tex. 363, 99 S.W. 1112, 1115 (1907); *Moulton v. Alamo Ambulance Service, Inc.* 414 S.W.2d 444, 448 (Tex.1967). This apparent conflict has given rise to the very strong argument in the dissent by three Supreme Court justices setting out a persuasive line of supporting authority for the proposition that privileged interference is an affirmative defense and should be plead and proved. *Sakowitz, Inc., supra* at 109 (Dissent); *Tippett v. Hart,* 497 S.W.2d 606, 613 (Tex.Civ. App.—Amarillo) writ ref'd n.r.e., per curiam, 501 S.W.2d 874 (Tex.1973); *Bellefonte Underwriters v. Brown, supra* at 573–74; *Armendariz v. Mora, supra* at 405; See also W. PROSSER, The Law of Torts § 129 (4th Ed.1971).

In this case, although Van Horn and LAN filed general denials and failed to specifically plead privileged interference as an affirmative defense, the record reflects that the issue was tried by consent and was therefore available to Van Horn and LAN. *Petroleum Anchor Equipment, Inc. v. Tyra,* 419 S.W.2d 829 (Tex.1967).

Nevertheless, the directed verdict was improper whether the elements of tortious interference were as reflected by the holdings prior or subsequent to *Sakowitz, Inc.*

sues were raised involving the conspiracy claim also, they should have likewise been resolved by the jury. Nor is it suggested that the jury would be obligated to find favorably on any issue discussed, but merely that Solis was entitled to have the jury decide these issues one way or another.

This court, it appears, would deny Solis his tortious interference and conspiracy causes of action against Van Horn and LAN as a matter of law regardless of the circumstances. Solis could have performed his work to a perfection, and as long as Van Horn and LAN had the right to reject his work and recommend his termination, they could do so, and Solis would have no recourse. The court has in effect eliminated the necessity for Van Horn to have acted justifiably and in good faith in order to escape liability for any interference.

The court further holds that although the refusal of the trial judge to admit the prior testimony of Tim Donnell may have been error, it was harmless error. They contend that because the same evidence was presented by the testimony of Solis himself, it is cumulative and therefore harmless. Evidence from a disinterested person which corroborates the testimony of the plaintiff can hardly be considered cumulative and harmless when the results in the trial were a directed verdict against the plaintiff.

I would reverse the judgment and remand the cause for a new trial.