Holloway v. Skinner 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-010-CV





GRAHAM HOLLOWAY,



 APPELLANT


vs.





RICK SKINNER AND ALVIN ORD'S, INC.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 421,785, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 




 Graham Holloway appeals from an adverse judgment rendered in favor of Rick
Skinner and Alvin Ord's, Inc. (collectively, "appellees") on a tortious-interference-with-contract
claim. Appellees alleged that Holloway, the president, a director, and a shareholder of Holligan,
Inc. ("Holligan"), interfered with a contract entered into by appellees and Holligan. A jury found
in favor of appellees on the tortious-interference claim, and the trial court, after denying
Holloway's motion for judgment non obstante veredicto (n.o.v.), rendered judgment on the verdict
awarding appellees actual and punitive damages. On appeal, Holloway contends that his status
as president, director, and shareholder of Holligan shields him from liability for interfering with
the contract between appellees and Holligan. We will affirm the trial court's judgment.


BACKGROUND


 Skinner was the original owner of Alvin Ord's, a sandwich-shop franchise. In 1981
Holloway and his father-in-law, Tom Culligan, approached Skinner with an offer to purchase
Alvin Ord's. The three parties agreed to do business under the corporate name of Holligan, Inc.,
with Skinner contributing company-owned Alvin Ord's stores and franchise agreements, while
Holloway and Culligan would contribute management skills and capital. Skinner received a
promissory note from Holligan for $63,000, a percentage of the gross sales of the Alvin Ord's
restaurants pursuant to a royalty agreement, a percentage of Holligan's stock, and a job with the
corporation. During the sale negotiations, Skinner attempted and failed to obtain written personal
guarantees from Holloway and Culligan on Holligan's obligations to Skinner. Nevertheless,
Skinner, Holloway, and Culligan reached an agreement for the sale of Alvin Ord's and began
doing business as Holligan, with Holloway serving as the corporation's president. (1)

 From 1981 to 1984, Holligan sporadically maintained its obligations under the note
and the royalty agreement. By 1984, relations between Skinner and Holloway had deteriorated,
and Skinner left Holligan as an officer/employee. Holloway's annual salary was then
approximately $24,000. Holloway's salary increased to $33,000 in 1985, and increased again to
$44,500 in 1986. In 1985 Holligan's outside auditor questioned the corporation's continued
viability, and, due to Holligan's economic situation, its largest secured creditor, United Bank of
Texas, threatened foreclosure. 

 Culligan had died sometime before, and his wife, Jean, succeeded to his interest,
including his large percentage of Holligan stock. In response to United Bank's pressure, Jean
Culligan opted to purchase Holligan's debt from the bank and replace it as Holligan's largest
secured creditor. She also sought to purchase Skinner's interest in Holligan in order to eliminate
Holligan's ongoing debt to him. Skinner refused to sell his interest, and Holligan defaulted on
its obligation to him in July 1985. Skinner sued Holligan for breach of its obligations under the
note and the royalty agreement and secured a favorable judgment in June 1986. However, the
judgment remained unsatisfied because Holligan filed for bankruptcy protection.

 Subsequently, appellees filed the present suit claiming that Jean Culligan,
Holloway, and Holloway's wife had tortiously interfered with Skinner and Holligan's contract by
forcing the company to default on its obligations. The jury failed to find against Jean Culligan
and Holloway's wife, but found that Holloway had tortiously interfered with Skinner's contract
with Holligan. After denying Holloway's motion for judgment n.o.v., the trial court rendered
judgment on the jury verdict awarding actual and punitive damages.

 On appeal, Holloway contends that, as the president, a director, and a shareholder
of Holligan, he could not have interfered with Skinner and Holligan's contract as a matter of law. 
In the alternative, Holloway argues that, even if he interfered with the contract between Skinner
and the corporation, such interference was privileged as a matter of law because he was acting in
his capacity as the president, a director, and a shareholder of Holligan in inducing the corporation
to breach its obligations to Skinner under the note and the royalty agreement.


DISCUSSION


 Typically, a tortious-interference action involves a third party who knowingly
induces a party to a contract to breach, thereby damaging the other party to the contract. In such
a case, the plaintiff must show that: (1) a contract subject to interference existed; (2) the act of
interference was willful and intentional; and (3) such intentional act proximately caused plaintiff's
damages or loss. Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 939 (Tex. 1991). If the
plaintiff can show these elements and establish a prima facie case of tortious interference, the
burden shifts to the defendant to show that the interference was justified. Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); Armendariz v. Mora, 553 S.W.2d 400, 405 (Tex.
Civ. App.--El Paso 1977, writ ref'd n.r.e.). To establish the affirmative defense of legal
justification, the defendant must show that the interference (1) was done in a bona fide exercise
of the defendant's own rights, or (2) the defendant's interest in the contract's subject matter was
equal or superior to the plaintiff's. Sterner, 767 S.W.2d at 691.

 Holloway maintains that, regardless of whether Skinner established a prima facie
case for tortious interference, Holloway enjoys immunity from liability for his conduct due to his
status as a corporate agent. Although we agree with the principle that, generally, corporate
directors and officers will not be liable for tortiously interfering with the contracts of their
corporate principal, we believe that Holloway states the proposition too broadly; such immunity
is usually not absolute. See generally 3 William M. Fletcher, Fletcher Cyclopedia of the Law of
Private Corporations § 1001 (perm. ed. rev. vol. 1986).

 The Texas Supreme Court has acknowledged that "an officer or director may not
be held liable in damages for inducing the corporation to violate a contractual obligation, provided
that the officer or director acts in good faith and believes that what he does is for the best interest
of the corporation." Maxey v. Citizens Nat'l Bank, 507 S.W.2d 722, 726 (Tex. 1974) (emphasis
added). As we understand this statement, when corporate officers and directors act against the
interest of the corporation, act for their own pecuniary benefit, or act with the intent to harm the
plaintiff in inducing the breach of contract, they can be held liable to the injured party. See 3
Fletcher § 1001.

 We recognize that one circumstance seems to justify holding a corporate agent
absolutely immune from liability for interfering with the corporation's contract--when the interests
of the corporation and its agent are so closely aligned as to be incapable of separation. See, e.g.,
Baker v. Welch, 735 S.W.2d 548, 549 (Tex. App.--Houston [1st Dist.] 1987, writ dism'd) (holding
that corporation's president/sole shareholder was so closely aligned in interest with corporation
as to be same entity, incapable of tortious interference); see also Schoellkopf v. Pledger, 778
S.W.2d 897, 903 (Tex. App.--Dallas 1989, writ denied) (relying on Baker in holding that
individual defendants who wholly owned corporation were so closely aligned with corporate
principal as to be same entity); cf. Deauville Corp. v. Federated Dep't Stores, Inc., 756 F.2d
1183, 1196-97 (5th Cir. 1985) (holding wholly-owned subsidiary incapable of conspiring with
parent corporation because financial interests are identical). The theory underlying absolute
immunity for a director in a "one person" corporation is that the director and the corporation are,
in effect, identical, and a party cannot be liable for inducing him or herself to breach a contract. 
See 3 Fletcher § 1001.

 The sort of absolute immunity that whole owners/sole shareholders enjoy is,
however, inapplicable here. In both Baker and Schoellkopf, the defendants entirely owned the
corporation that breached the contract; in the instant case, Holloway owned only about forty
percent of Holligan when the corporation defaulted on its obligation to Skinner. Because
Holloway did not own all of Holligan, he lacked that unity of financial interest which would
warrant considering him the same entity as Holligan. (2) Under these circumstances, Holloway
could act in his own best interest while acting against the corporation's. Consequently, we hold
Holloway does not enjoy the immunity that shields sole shareholders from liability for tortious
interference with Holligan's contracts.

 Stressing that no reported Texas case involving a tortious-interference claim against
a corporate agent has held the defendant liable, Holloway concludes that such liability can never
attach. We disagree. Although most of these cases loosely discuss the principle that corporate
agents are generally not liable for inducing a breach of the corporation's contracts, they recognize
the possibility that agents could be liable for tortiously inducing a breach if, for example, they had
acted outside the scope of their agency, in furtherance of personal objectives, or with malice. (3) 
See, e.g., John Masek Corp. v. Davis, 848 S.W.2d 170, 175 (Tex. App.--Houston [1st Dist.]
1993, writ denied); American Medical Int'l, Inc. v. Giurintano, 821 S.W.2d 331, 335-36 (Tex.
App.--Houston [14th Dist.] 1991, no writ); Victor M. Solis Underground Util. & Paving Co., Inc.
v. City of Laredo, 751 S.W.2d 532, 535 (Tex. App.--San Antonio 1988, writ denied); Gonzalez
v. Gutierrez, 694 S.W.2d 384, 388 (Tex. App.--San Antonio 1985, no writ); Eloise Bauer &
Assocs., Inc. v. Electronic Realty Assocs., Inc., 621 S.W.2d 200, 203-04 (Tex. Civ.
App.--Texarkana 1981, writ ref'd n.r.e.); Southwestern States Oil & Gas Co. v. Sovereign
Resources, Inc., 365 S.W.2d 417, 422 (Tex. Civ. App.--Dallas 1963, writ ref'd n.r.e.). 
Moreover, Texas law recognizes that corporate agents who knowingly participate in a tortious act
may be held individually liable without the need to pierce the corporate veil. Grierson v. Parker
Energy Partners, 737 S.W.2d 375, 377-78 (Tex. App.--Houston [14th Dist.] 1987, no writ);
Barclay v. Johnson, 686 S.W.2d 334, 336-37 (Tex. App.--Houston [1st Dist.] 1985, no writ). 

 We attribute the fact that no defendant corporate agent in this state has been held
liable for tortious interference to the defendant's relatively low burden to show that the action
inducing a breach was taken in good faith. "`Good faith' means no more than the intent to benefit
the corporation and is not to be equated with a lack of personal interest in the financial welfare
of the corporation." 3 Fletcher § 1001. Stated differently, a defendant corporate agent may avoid
liability by showing that interference was legally justified, either as a bona fide exercise of the
defendant's own rights or because the defendant's interest in the contract's subject matter was
equal to or superior to the plaintiff's. (4) See, e.g., Victor M. Solis Underground, 751 S.W.2d at
535 (holding that City's consulting engineer, who had absolute right to reject nonconforming work
on construction project, was legally justified in recommending to City that contractor be
terminated, and hence was not liable for tortious interference). However, despite corporate
agents' conditional privilege to interfere with the corporation's contracts, "the issue of a corporate
officer's intent [in inducing a breach] has been characterized as a question of fact, with the mere
fact of defendant's officer status being insufficient to support a motion for summary judgment." 
3 Fletcher § 1001.

 In his first, second, third, and fifth points of error, Holloway essentially claims
that, as a matter of law, his status as a corporate agent precludes the possibility that he could
interfere with Holligan's contracts--specifically the note and the royalty agreement. Based on our
determination that a corporate agent is subject to tortious-interference liability if that agent fails
to act in good faith and in the corporation's best interest--that is, without legal justification--we
overrule Holloway's first, second, third, and fifth points of error.

 In his fourth point of error, Holloway advances an alternative argument--that, if he
could and did interfere with appellees' contracts with Holligan, such interference was privileged
as a matter of law because, as president, director, and a shareholder of Holligan, Holloway was
making a bona fide exercise of his rights or because he had an interest in the contracts' subject
matter equal or superior to appellees'. Holloway pleaded legal justification, which the Texas
Supreme Court has held to be an affirmative defense. (5) See Sterner, 767 S.W.2d at 690. 
Holloway failed, however, to secure a favorable jury finding that his interference was legally
justified. Because Holloway now attacks an adverse finding upon which he had the burden of
proof, we must examine the record for evidence and inferences tending to support the finding and
disregard all evidence and inferences to the contrary; if no evidence exists to support the jury's
answer, we must examine the entire record to see if the contrary proposition is conclusively
established. See id.; see also William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence", 69 Tex. L. Rev. 515, 523 (1991).

 The record reflects that under the royalty agreement, Holligan was to pay appellees
a percentage of the gross sales from the Alvin Ord's stores. Holloway's own testimony reflects
that appellees were entitled to the percentage regardless of whether the corporation was operating
at a profit. The evidence reflects that the overriding royalty percentage from the sales at Alvin
Ord's stores was due as it accumulated. Holligan defaulted on its financial obligations under the
note and the royalty agreement in July 1985. During the next two years, Holloway increased his
salary by $20,500. The fact that Holloway raised his salary at the time of the default suggests that
funds were available to pay Holligan's debts under the contracts. This constitutes some evidence
from which the jury could infer that Holloway was not acting in good faith for the best interest
of the corporation in withholding payment due appellees under the royalty agreement and the note;
but that, instead, Holloway was using his position at Holligan to derive a direct, personal,
pecuniary benefit at the expense of the corporation's existing financial obligations to a creditor. 
Although, the defendant's burden is slight to show that he induced a breach of a corporate
obligation in good faith with the intent to benefit the corporation, Holloway failed to meet that
burden.

 We note that, rather than citing record evidence to demonstrate conclusively that
he had a legal right to default, Holloway relies on his status as a corporate agent and shareholder
to support his position that his conduct was justified as a matter of law. We recognize that some
cases have held stock ownership is a financial interest that may justify interference with a
corporation's contract. See McCormick, 838 S.W.2d at 743; Baker, 735 S.W.2d at 549;
Consolidated Petroleum Indus., Inc. v. Jacobs, 648 S.W.2d 363, 367 (Tex. App.--Eastland 1983,
writ ref'd n.r.e.); Davis v. Alwac Int'l, Inc., 369 S.W.2d 797, 802 (Tex. Civ. App.--Beaumont
1963, writ ref'd n.r.e.). We believe, however, that the only status that can assure immunity from
tortious-interference liability is defendant's total ownership of the corporation. Otherwise, legal
justification is a matter for the fact finder to decide. Here, the jury determined that the evidence
would not support Holloway's claims of legal justification. We have found in the record some
evidence supporting the jury's determination that Holloway induced a breach without justification. 
Hence, the record before us does not conclusively establish that Holloway was legally justified
to withhold the monies due appellees as payments under the note and the royalty agreement. 
Therefore, we overrule Holloway's fourth point of error. We also overrule Holloway's sixth
point of error that the trial court erred in submitting the jury question concerning legal
justification.


CONCLUSION


 Having determined that some evidence exists to support the jury's findings that
Holloway, without legal justification, induced Holligan to breach its obligations under the note
and the royalty agreement, we affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

[Before Chief Justice Carroll, Justices Kidd and B. A. Smith]

Affirmed

Filed: August 11, 1993

[Publish]

1. [1] At completion of the sale, Holligan had five shareholders: Skinner, Holloway, Culligan,
Mike Cook, and Mark Ritter. Cook and Ritter are not involved in this action.
2. [2] We note that one Texas court has suggested that a ninety-percent shareholder may be so
closely aligned with the corporation as to be the same entity. See Lone Star Ford, Inc. v.
McCormick, 838 S.W.2d 734, 743 (Tex. App.--Houston [1st Dist.] 1992, writ denied). 
However, the reasoning underlying absolute immunity for a sole shareholder does not hold
when a defendant does not wholly own the corporation, regardless of the division of ownership
among various shareholders. Consequently, to the extent that Lone Star may be read to hold
that less than sole ownership can assure a defendant director's absolute immunity from
tortious-interference liability, we decline to follow it.
3. [3] An exception would seem to be Terry v. Zachry, 272 S.W.2d 157 (Tex. Civ. App.--San
Antonio 1954, writ ref'd n.r.e.). The Terry court, relying on language from Said v. Butt,
L.R. 3 K.B. 497, suggested that an agent who causes the breach of his principal's contract can
never be liable for tortious interference because the agent is the principal's alter ego. The
Texas Supreme Court has disapproved the Terry decision to the extent that it allocated to the
plaintiff the burden of showing legal justification for interference with a contract. See Sterner,
767 S.W.2d at 690. We believe that Texas' jurisprudence has evolved beyond the theory that
all corporate agents, regardless of whether they are sole shareholders, have absolute immunity
to tortiously interfere with their principals' contracts; therefore, we decline to adopt the Terry
approach.
4. [4] One policy justification for providing corporate agents a relatively easy means to avoid
liability for tortious interference with the corporation's contracts has been articulated as
follows:


 In so immunizing corporate directors from personal liability the
law has proceeded on the theory that in so acting they are but the
agents of the corporation and that the breach is that of the
corporation, and hence it alone is answerable therefore, and,
further, that to hold otherwise would tend to hinder directors of a
corporation from acting on their judgment for the interest of their
corporation and that they should be left free from possible
liability of that kind.


Maxey, 507 S.W.2d at 726 (quoting 3 Fletcher § 1001 (perm. ed.)).
5. [5] Although Holloway apparently pleaded his legal-justification argument as an affirmative
defense, he suggests on appeal that, when a plaintiff brings a tortious-interference claim
against a corporate agent, the plaintiff should have the burden to show that the agent induced
the corporation's breach without justification. Sterner, however, holds the opposite. The
court explained that legal justification is treated as a type of privilege and that the party
asserting the privilege does not deny the interference, but rather seeks to avoid liability by
asserting a countervailing right or interest in the contract. 767 S.W.2d at 689-90. From this
the Sterner court concluded that legal justification is an affirmative defense to be pleaded and
proven by the defendant. Id. at 690.


 Sterner's reasoning is as applicable and compelling when the tortious-interference
defendant is a corporate agent as when the defendant is not. Consequently, we decline
Holloway's invitation to reallocate the burden of proof in tortious-interference actions brought
against corporate agents.